### In re David Villeneuve

[709 A.2d 1067]

No. 96-640

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed February 6, 1998

·· *Michael Rose*, St. Albans, for Plaintiff-Appellee.

*F. Brian Joslin* of *Theriault & Joslin*, Montpelier, and *Michael A. Fitzhugh* and *Edward P. O'Leary* of *Fitzhugh & Associates*, Boston, Massachusetts, for Defendant-Appellant.

**Dooley, J.** Defendant Ford Motor Co. appeals from a ruling of the Chittenden Superior Court which overturned a decision of the New Motor Vehicle Arbitration Board because of the participation in it of board members who did not attend the evidentiary hearing. The arbitration board decision found that a Ford truck which plaintiff, David Villeneuve, purchased new from a local Ford dealer was not a "lemon" and plaintiff was not entitled to a refund. Defendant argues that the court decision was erroneous under the very narrow standard of review applicable to these proceedings. Plaintiff argues, by way of cross-appeal, that the court erred in remanding for a new hearing because he is entitled to relief as a matter of law. We affirm.

This proceeding was brought under the New Motor Vehicle Arbitration Act, 9 V.S.A. §§ 4170-4181, commonly known as the lemon law, "which was passed in order to facilitate an expeditious and inexpensive resolution of automobile warranty problems." *Pecor v. General Motors Corp.*, 150 Vt. 23, 24, 547 A.2d 1364, 1365 (1988). On September 27, 1995, plaintiff filed a complaint with the New Motor Vehicle Arbitration Board that the 1995 Ford truck, purchased in January 1995, had been out of service for repair of warranted defects for 30 days or more and still had the following defects:

> Bolt missing in RR wheel well, windshield wipers, mud flaps, right front door, air bag overload system, oil leak in motor, windshield broken, red paint bad, black paint bad, tailgate screws, wood trim, running board lights, rear cowl falling off, masking tape left on roof and cowl, cowl under front bumper, center wooden console poorly finished, brakes, running boards misaligned, screws on rubber strip that holds down rug, missing rubber in window and rusty screws that hold stainless steel tailgate protector on.

Plaintiff sought a refund of the purchase price.

At the time of the complaint, the vehicle was with a South Burlington Ford dealer for repair. It went in for repair on July 10, 1995, and was returned to plaintiff on October 10, 1995. Apparently, the repairs performed narrowed the claimed list of defects. For example, at the hearing plaintiff testified that the windshield wiper defects and engine oil leak had been resolved. Plaintiff remained concerned about leaks around the windshield and defects in the brakes and added a new concern that the horn did not function.

Although plaintiff had purchased the vehicle from the Ford dealer, it had been customized by a vehicle modification company, Centurion, Inc. Ford's position was that any remaining defects were the responsibility of Centurion, and not Ford. In fact, in August of 1995 the Ford dealer had shipped the vehicle to Centurion in Michigan. It spent about half of the three-month repair attempt at Centurion.

The New Motor Vehicle Arbitration Board is established by statute with five members and two alternates. See 9 V.S.A. § 4174(a). Four members were present for the hearing in this case. They took evidence for about an hour and a half on October 26, 1995 and thereafter had a view and test drive of the truck. During the hearing, one member of the board announced that he would recuse himself because he was a Ford dealer.

The board rendered a decision on December 22, 1995. The brief findings recite that plaintiff sought a refund and quote plaintiff's list of defects. They also find that the vehicle was out of service for thirty or more days to repair warranted defects. Thereafter, the following decision is written:

### DECISION OF THE BOARD

The service history of the vehicle during the warranty period would not cause a reasonably prudent buyer to believe that the vehicle was a defective vehicle commonly known as a lemon; and, therefore, the defects and nonconformities under the manufacturer's warranty do not substantially impair the use, market value or safety of the vehicle.

The decision is signed by the chair. Thereafter, it states that five members participated in the decision and one abstained. The five members participating include the three persons who were at the hearing and two other members who were not present at the hearing. Those two members each filed a "certification" stating that "I listened to the October 26, 1995 hearing tape in the above referenced matter

and participated in a Board deliberation prior to rendering my decision." The final vote was three to two; both of the dissenting votes were cast by members who were at the evidentiary hearing. Thus, a majority of the prevailing votes were cast by board members who were not at the evidentiary hearing.

Plaintiff moved to vacate the board decision on December 20, 1995, arguing that the participation in the decision of members who did not attend the evidentiary hearing was improper and that the board improperly used an objective standard to determine whether the vehicle was a "lemon." The superior court agreed that the participation of the absent board members was improper. It accepted that it might be possible for members to participate in a decision, without attending the hearing, but decided that participation was not proper in this case because: (1) the decision was based in part on a view and test drive of the vehicle, attended by the members at the hearing, and not otherwise reflected in the record or findings; and (2) the tape and transcript of the hearing was of poor quality and the evidence was impossible to follow. The superior court also decided that the board used the correct standard to determine whether the vehicle was a lemon and that the appropriate remedy was a remand for further proceedings.

We start with Ford's argument that the superior court exceeded its jurisdiction in reversing the board decision. As Ford emphasizes, the "lemon law" provides only a very limited role for the superior court in reviewing a decision of the board. The court may vacate or modify a board decision only if the appealing party proves "by clear and convincing evidence" that one of the four statutory grounds exist. 9 V.S.A. § 4176(a). The statutory grounds are taken from the Vermont Arbitration Act and are virtually identical to the grounds for vacating an arbitration award. See 12 V.S.A. § 5677; *Muzzy v. Chevrolet Div., Gen. Motors Corp.*, 153 Vt. 179, 184, 571 A.2d 609, 612 (1989). As we emphasized in *Muzzy*, we do not "sit as an appellate court on errors of fact or law made by the Board" and intervene to correct an error of law only "under extreme circumstances." 153 Vt. at 184-85, 571 A.2d at 612-13.

The superior court found that two of the statutory grounds to vacate were present here: (a) "the board exceeded its powers"; and (b) the board "refused to hear evidence material to the controversy or otherwise conducted the hearing contrary to the rules promulgated by the board so as to prejudice substantially the rights of a party." 9 V.S.A. § 4176(a)(3), (4). The court decided that the board violated its

Rule 23 requiring consideration of "all the facts and arguments in a case" because the two members absent from the hearing could not gain the facts from the tape alone, particularly because of the importance of the vehicle inspection; and also violated Rule 21 which makes the evidence and argument presented at the hearing "plus any knowledge gained from the inspection of the motor vehicle" the "exclusive record for decision."

Even though we must first determine whether the superior court acted within its limited review power, it is helpful to first look at the substance of its decision. In *Lewandoski v. Vermont State Colleges,* 142 Vt. 446, 457 A.2d 1384 (1983), we considered a claim that the Vermont Labor Relations Board lacked jurisdiction to render a grievance decision adverse to the employee because no member of the board had attended all of the evidentiary hearing. The employee also argued that the failure of all the board members to attend all of the hearing denied him due process of law. We followed the majority rule that "in order to comply with due process it is only required that members not present when testimony is taken review the testimony before participating in the decision." *Id.* at 452-53, 457 A.2d at 1387. We upheld the board decision with the following holding:

> We therefore follow the majority rule, and hold that on the facts presented here, where a quorum of administrative officers has been present throughout, and where the whole tribunal has carefully reviewed the record prior to rendering a decision, grievant was not denied due process of law.

*Id.* at 453, 457 A.2d at 1387-88.

As *Lewandoski* noted, the holding is similar to that of most courts that have considered the question, at least where the credibility of one or more witnesses is not central to the decision. See *id.* at 452-53, 457 A.2d at 1387. But due process does require the decision maker's personal presence at evidentiary hearings where the agency involved "elects to make factual determinations as a hearing panel and the record does not provide a reasonable basis for evaluating the kind of testimony in question." *In re Grimm,* 635 A.2d 456, 459 (N.H. 1993). Although the superior court couched its decision in terms of the board rules, it ruled, in essence, that the record reviewed by the members absent from the hearing did not "provide a reasonable basis for evaluating" the evidence.

We will uphold the trial court's review of the relevance of evidence in an arbitration proceeding absent an abuse of discretion.

See *Matzen Constr., Inc. v. Leander Anderson Corp.*, 152 Vt. 174, 178, 565 A.2d 1320, 1323 (1989). Within that standard of review, we find the superior court's evaluation of the evidence fully supported by the record.

The hearing was conducted primarily through questions of the chairman of the board, supplemented by questions from other members. It is an understatement to say that this method of evidence presentation did not clearly identify the issues and positions of the parties or allow each side to present fully the testimony it found relevant. Indeed, the parties often vied to answer the board's questions as quickly and aggressively as possible, causing them to talk over each other. At one point, the chairman commented: "We're going to do one at a time or we're going to get into a fistfight." The situation was aggravated by the failure of either party to comply with discovery obligations to state their positions prior to the hearing.

To the extent we can discern it, the position of Ford appeared to be that it had not received a last opportunity to repair, as is its statutory right, 9 V.S.A. § 4173(d), and the continuing defects were the obligation of the company which modified the truck, and not Ford. Although Ford prevailed in the board's written decision, it did so on a ground it had never raised or argued.

■ The court found that the audio tape of the hearing, and the transcript typed from that tape, was an inadequate record for decision for two reasons. First, the members present viewed the vehicle and test drove it. The court concluded that the view and test drive must have been important to the board majority's evaluation that the defects and warranty nonconformities did not "substantially impair the use, market value or safety of the vehicle." The observations administrative board members make at a view are evidence and are properly considered in arriving at a decision. See *In re Quechee Lakes Corp.*, 154 Vt. 543, 552, 580 A.2d 957, 962 (1990). Ordinarily, the board members must include the result of their observations in their findings, see *id.*, but the very limited standard of review prevents us from enforcing this requirement here. Nevertheless, the absence of any findings based on the view makes it difficult for a reviewing court to discount this evidence and hold that it was harmless that board members who participated in the decision did not view the vehicle. We agree with the superior court that the absence of board members from the view and test drive prevented them from participating in the decision in this case.

We do not have to decide whether the poor testimonial record alone would have prevented participation by members not present at the hearing. Certainly, the chaotic testimony presentation impaired the ability of all board members, whether or not present at the hearing, to render a thorough and thoughtful decision. The tendency of parties to try to speak over each other made it difficult for the transcriber to identify the speaker. In a number of instances, the testimony was inaudible and could not be transcribed. Nevertheless, the identity of the speaker could usually be inferred from the substance of the statement and the instances of lost testimony were not critical to capturing the gist of the position of the parties.

To provide guidance to the board, however, we emphasize that the defects in the evidentiary record have much greater significance where, as here, the findings are sparse and inadequate. To the extent the board desires that members participate in future decisions without attending the evidentiary hearing, we are much more likely to uphold the ultimate decision if the absent members view the vehicle and the majority of the board issues sufficiently detailed findings so we can determine how it evaluated the evidence that was before it.

■ We reviewed the merits of the superior court decision first because its rationale necessarily determines whether the court had the power to intervene to provide a remedy for the board error. Although subject to some of the procedures of an arbitration body, the board is a public administrative agency which must provide due process of law to consumers and manufacturers who appear before it. Thus, irrespective of the narrow standard of review, the court must vacate a board decision that is, like this one, based on a violation of due process.

■ We have no difficulty in reaching the same result under the statutory grounds for vacating an arbitration award. As we stated with respect to private arbitrations, the scope of court review "is limited to ensuring that the arbitration proceedings fall within the boundaries of due process." *Matzen*, 152 Vt. at 177, 565 A.2d at 1322. The rules of the board "are designed to provide a simple, fair and orderly procedure." Vermont New Motor Vehicle Arbitration Board Rules, Rule 1, 9 Code of Vt. Rules, Rule 80180001 at 1 (1992). The board must "conduct a hearing on all issues for decision." *Id.* Rule 16. The board must render a decision after considering "all the facts and arguments in a case." *Id.* Rule 23. We agree that the board violated its own rules and that violation provided jurisdiction to vacate the award under 9 V.S.A. § 4176(a)(4).

The superior court properly vacated the decision of the board which denied plaintiff a remedy. By cross-appeal, plaintiff argues that the board and superior court erred in using an objective standard to determine whether he was satisfied with Ford's repair attempts. He argues that he should prevail because he remains unsatisfied with the repairs despite the fact that the vehicle was out of service for repairs for thirty days or longer. In making these arguments, he relies upon *Muzzy*, 153 Vt. at 186-90, 571 A.2d at 614-16, where we held that although the manufacturer has one last opportunity to repair the vehicle after the consumer files a complaint with the board, this repair would not prevent relief if the consumer was dissatisfied with it. We held that we must apply a subjective standard to determine satisfaction.

■ The *Muzzy* holding is based on a construction of 9 V.S.A. § 4173(d), which specifically requires that the consumer be satisfied with a last repair attempt. Here, the board's decision rests on a different statutory section which requires the board to find that a defect or condition "substantially impairs the use, market value, or safety of the motor vehicle to the consumer." 9 V.S.A. § 4172(e). The statute goes on to provide that it is an "affirmative defense to any claim under this chapter that an alleged nonconformity does not substantially impair the use, market value or safety." *Id.* § 4172(f). We must construe a statute according to the ordinary meaning of the words the legislature has chosen. In this case, those words clearly set forth an objective standard. Neither the board nor court erred in using an objective standard to determine whether defendant proved the affirmative defense.

■ Finally, plaintiff argues that the court should not have remanded to the board because only three board members could rule on the case and they found in his favor by a two-to-one vote. The superior court apparently agreed that plaintiff could prevail on a two-to-one vote but remanded for further proceedings to enable the two dissenting members to determine whether plaintiff was entitled to relief according to the statutory standards. Defendant contests that a consumer can obtain relief on an affirmative vote of only two members of the board. We agree with defendant on this issue. 1 V.S.A. § 172 provides:

### § 172 Joint authority

When joint authority is given to three or more, the concurrence of a majority of such number shall be sufficient and shall be required in its exercise.

There is nothing in the statutory procedures governing the New Motor Vehicle Arbitration Board to suggest that § 172 does not apply to it. The statute clearly requires that a majority of the members of an administrative board must vote for a result for the vote to be effective.

Here, a majority of the board has not voted for a result. The only feasible remedy is to require a rehearing of the evidence in compliance with the procedures set out in this opinion to reach a result in compliance with § 172. Although we agree with the superior court that a remand is required, we differ on the scope of the remand and the nature of the action that the board must take.

*The decision of the Chittenden Superior Court is affirmed. The matter is remanded to the Vermont New Motor Vehicle Arbitration Board for proceedings consistent with this opinion.*