2007 VT 114

# In re Peter A. Lakatos, D.M.D.

[939 A.2d 510]

No. 06-014

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Bent, Supr. J., Specially Assigned.

Opinion Filed October 19, 2007

*Robert H. Backus* and *Hugh L. Brady*, Law Clerk, Secretary of State's Office, Montpelier, for Petitioner-Appellant.

*Kaveh S. Shahi* of *Cleary Shahi & Aicher, P.C.*, Rutland, for Respondent-Appellee.

¶ 1. **Reiber, C.J.** The State of Vermont appeals from a superior court order vacating a decision of the Vermont Board of Dental Examiners. Following an evidentiary hearing and disciplinary recommendation by a specially appointed hearing committee, the Board suspended respondent Peter Lakatos, a licensed dentist, for failure to meet minimal standards of practice in numerous instances. After a summary affirmance by the administrative appellate officer, respondent appealed to the superior court, asserting that (1) the hearing committee utilized by the Board lacked statutory authority, (2) the Board violated his due-process rights by rendering a decision despite the absence of some members from the evidentiary hearing, (3) the evidence was insufficient to support the findings of unprofessional conduct, and (4) the sanctions imposed were arbitrary and capricious. The court agreed with the procedural and due-process claims, and accordingly vacated the decision and remanded for a new hearing without reaching respondent's additional arguments. On appeal, the State contests the court's conclusions and contends that respondent waived the claims in any event. For the reasons set forth below, we reverse and remand.

¶ 2. The material facts may be briefly summarized.[1] Respondent, an experienced dentist, practiced in Massachusetts for twenty years before moving to Vermont, where he renewed his practice in 1996. Respondent claims expertise in a number of practice areas, including endodontics, or the treatment of diseases relating to the tooth root and surrounding areas, which comprises about twenty-five percent of his practice. In October 2001, the Board of Dental Examiners, through the Office of the Attorney General acting as general counsel, filed a specification of charges against respondent containing a number of counts of unprofessional conduct, including one in connection with alleged improper bridge work, four relating to improperly performed root canals or post placements, and one alleging abandonment of a patient.[2]

¶ 3. Following an exchange of memoranda and motions among the parties and Board counsel relating to the time necessary for presentation of the case and the adequacy of prefiled testimony, Board counsel sent the parties a letter in April 2002, outlining the procedure which the Board had determined to follow and the dates for the scheduled hearing. Counsel stated that the Board had "decided to proceed under 3 V.S.A. § 811,"[3] explaining that an evidentiary hearing would be held before a "Board hearing committee" with three members — a dentist, dental hygienist, and lay person, assisted by a presiding officer — who would then file a proposal for decision with the Board. The letter indicated that the parties would have an opportunity to discuss the hearing procedure at a previously scheduled prehearing conference in late May unless a more immediate response was required. Following the prehearing conference, Board counsel issued a memorandum

---

[1] Because the trial court did not address respondent's claims concerning the sufficiency of the evidence and the propriety of the sanctions imposed, we need not discuss in detail the facts underlying the allegations of unprofessional conduct except where relevant to the procedural and due-process claims.

[2] In November 2002, the State added an additional count alleging improper root-canal work.

[3] This statute in part provides:

When in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the officials who are to render the decision.

reaffirming the hearing-committee procedure previously outlined and explaining in addition that the parties would have an "opportunity to file exceptions and present briefs and argument" concerning the proposed decision with the Board, which would consist of the hearing committee plus additional members necessary to reach a quorum of at least five. It was further agreed that the committee would not make a recommendation on sanctions.

¶ 4. The hearing committee held an evidentiary hearing over the course of four days from July to October 2002. It issued a report and proposal for decision in December 2002, concluding that respondent had failed to meet the standards of practice on six of the eight counts alleged.[4] The report contained numerous findings and conclusions, and respondent filed extensive exceptions and a brief with the Board, which held oral argument in February 2003. Thereafter, in July 2003, the Board — comprising the three hearing-committee members plus six additional members (four dentists, one dental hygienist, and one public member) — issued a lengthy decision containing exhaustive findings and conclusions with citations to the evidentiary record. Although the Board declined to adopt the committee's proposed decision, it unanimously concluded — like the committee — that respondent had failed to comport with dental standards of practice on each of the substantive counts alleged, and had therefore committed unprofessional practice under the statutes and regulations governing the practice of dentistry. Although the parties subsequently reached a stipulation concerning sanctions, the Board rejected the stipulation, heard oral argument, and issued a sanction order suspending respondent from the practice of dentistry for six months, imposing a number of conditions for reinstatement, and requiring a two-year period of supervision by a licensed dentist following reinstatement. An appellate officer affirmed, and respondent then appealed to the superior court.[5] 3 V.S.A. § 130a.

¶ 5. As noted, the trial court reversed the Board's decision and remanded for a new hearing, concluding that the hearing-

---

[4] One of the counts had been previously dismissed by stipulation of the parties and another general count was dismissed by the committee as "duplicative."

[5] The appellate officer initially reversed and remanded the matter for the Board's alleged failure to comply with 3 V.S.A. § 811, but subsequently reversed himself, finding that the statute was inapplicable because the Board members who did not attend the hearing had read the record.

committee procedure utilized by the Board was not authorized by state law, and that the Board had violated respondent's due-process rights by rendering a decision without having personally attended the evidentiary hearing. The court did not, therefore, reach respondent's claims that the evidence failed to support the finding of unprofessional conduct, and that the sanctions were arbitrary and capricious. This appeal followed.[6]

## I.

¶ 6. The State contends the court erred in determining that the hearing-committee procedure was contrary to law, and asserts that respondent waived the claim in any event. We have held that, by failing to object and actively participating in an administrative proceeding, parties may waive any objection to a process which may not take "the exact form required by statute but which, nevertheless, is in substantial compliance therewith." *In re Burlington Elec. Dep't*, 141 Vt. 540, 545, 450 A.2d 1131, 1134 (1982) (quotation omitted); accord *Smith v. Brattleboro Reformer, Inc.*, 147 Vt. 303, 304, 515 A.2d 1056, 1057-58 (1986). A "[p]rocess prohibited by law," however, is void and may not "be cured by waiver, consent or agreement." *Burlington Elec. Dep't*, 141 Vt. at 545, 450 A.2d at 1134 (quotation omitted).

¶ 7. As the trial court noted, the statutory scheme does not "specifically authorize[]" the creation of a hearing committee of the kind utilized here. It does not necessarily follow, however, that the process followed by the Board was "prohibited by law" or

---

[6] Respondent has moved to dismiss the appeal on the ground that the State is not a party that may appeal the superior court's ruling. The assertion is unpersuasive. The statutory scheme governing appeals from professional boards such as the Board of Dental Examiners provides that a "party aggrieved" by a final decision of a board may appeal to the director and have the matter heard by an appellate officer. 3 V.S.A. § 130a. Thereafter, a "party aggrieved" by the decision of the appellate officer may appeal to the superior court. *Id.* The State, as the prosecuting agency, was plainly a party to the proceedings and as such would have been entitled to pursue an administrative appeal and an appeal to the superior court, and was further entitled to appeal from an adverse ruling by the superior court to this Court. See *Office of Prof'l Regulation v. McElroy*, 2003 VT 31, ¶ 1, 175 Vt. 507, 824 A.2d 567 (mem.) (after appellate officer reversed Real Estate Commission decision, State appealed to the superior court, which reversed and reinstated Commission decision); *In re Smith*, 169 Vt. 162, 164, 730 A.2d 605, 607 (1999) (after superior court reversed disciplinary decision of the Board of Nursing, the State appealed to this Court, which reversed the superior court and reinstated the Board's decision).

beyond the ability of the parties to "cure[ ] by waiver, consent or agreement." *Id.* To be sure, 3 V.S.A. § 129(f), which authorizes the appointment of a hearing officer to conduct a hearing that would otherwise be heard by the Board, does not similarly provide for the appointment of a hearing committee comprising less than a quorum of the Board. Under 3 V.S.A. § 811, however, a party adversely affected by a proposed administrative decision is entitled to certain additional procedural protections when "a majority of the officials of the agency who are to render the final decision have not heard the case or read the record." These include the right to notice of the proposed decision and the opportunity to "file exceptions and present briefs and oral argument" to the agency rendering the decision. *Id.* Although this section does not expressly refer to the appointment of a hearing committee, its reference to circumstances in which less than a "majority" of the decisionmaking agency has heard the case or read the record plainly contemplates hearings before a minority of the Board, as occurred here. This was the Board's reading of the provision as well, and we traditionally defer to an agency's interpretation of its enabling legislation absent a "compelling indication" to the contrary. *Lemieux v. Tri-State Lotto Comm'n,* 164 Vt. 110, 112-13, 666 A.2d 1170, 1172 (1995). Respondent here has identified no "compelling" basis to conclude that the Board misconstrued its authority or that the procedure it employed was contrary to any policy or provision of the Administrative Procedure Act or the Board of Dental Examiners or deprived respondent of any statutory or constitutional rights.

¶ 8. Accordingly, we discern no basis to conclude that the hearing-committee procedure was "prohibited by law" such that a finding of waiver or acquiescence by the parties would "nullify the statute prohibiting it." *Burlington Elec. Dep't,* 141 Vt. at 545, 450 A.2d at 1134. The record, moreover, leaves no doubt that respondent waived any challenge to the procedure by failing to raise an objection at any point during the hearing process in which he actively participated. See *id.* at 546-47, 450 A.2d at 1134-35 (holding that party who was alerted to allegedly defective hearing procedure utilized by the Public Service Board and raised no objection throughout the lengthy hearing "amount[ed] to a waiver of any deficiencies in the procedures adopted by the Board"). It is undisputed that, as noted, the Board informed the parties by letter, dated April 29, 2002, of its decision "to proceed under 3

V.S.A. § 811" pursuant to which a three-member committee and a presiding officer would. hear the evidence, make findings and conclusions, and file a proposed decision with the full Board, to which the parties would than have an opportunity to file exceptions and present argument. The letter invited comment, either immediately or at a prehearing conference scheduled in late May 2002. Following the conference, the presiding officer issued an order, dated May 31, 2002, again summarizing the procedure. No objections by the parties were noted.

¶ 9. Thereafter, the committee held four days of evidentiary hearings from July through October 2002. On more than one occasion during these hearings the presiding officer resummarized the procedures adopted by the Board and invited questions or comments on the process. Although respondent raised other issues, he never once questioned or objected to the hearing-committee procedure itself, argued that it was unauthorized, or claimed that it deprived him of due process. In these circumstances, we have no difficulty concluding that respondent's direct and active participation in proceedings that lasted several months, and failure to raise any objection despite numerous opportunities to do so, amounted to a waiver of any objection. The admonition in *Burlington Electric Department*, 141 Vt. at 547, 450 A.2d at 1135, applies with equal force here: "We will not permit a party thus to bide its time for months during complex, lengthy, and expensive proceedings, and then attempt an ambush when those proceedings draw to a close."

## II.

¶ 10. The State also challenges the trial court's conclusion that respondent was denied due process of law because a majority of the Board was not present during the evidentiary hearings. As the trial court correctly perceived, the issue is governed largely by two decisions of this Court. In *Lewandoski v. Vermont State Colleges*, 142 Vt. 446, 448, 457 A.2d 1384, 1385 (1983), we considered an employee's claim that he was denied due process in a grievance proceeding by the failure of all of the members of the Vermont Labor Relations Board to attend all of the hearings. In rejecting the claim, we expressed agreement with the "majority of cases hold[ing] that in order to comply with due process it is only required that members not present when testimony is taken review the testimony before participating in the decision." *Id.* at

452-53, 457 A.2d at 1387. We noted, however, that a quorum of the administrative officers had, in fact, been present throughout the proceedings. *Id.* at 453, 457 A.2d at 1388.

¶ 11. We revisited the issue more recently in *In re Villeneuve*, 167 Vt. 450, 709 A.2d 1067 (1998). There the defendant Ford Motor Company appealed from a decision of the New Motor Vehicle Board in favor of a consumer, claiming that it was denied due process because three of the five voting members of the Board had not attended the evidentiary hearing. After reviewing and reaffirming our decision in *Lewandoski*, we observed that its "holding is similar to that of most courts that have considered the question, at least where the credibility of one or more witnesses is not central to the decision." *Villeneuve*, 167 Vt. at 455, 709 A.2d at 1070. We cautioned, however, that "due process does require the decision maker's personal presence at evidentiary hearings where the agency involved elects to make factual determinations as a hearing panel and the record does not provide a reasonable basis for evaluating the kind of testimony in question." *Id.* (internal citation omitted). Applying this test, we agreed with the trial court that, because the Board members present at the hearing had both "viewed the vehicle and test drove it" and their observations had played an "important" role in the Board's finding that the vehicle was not a "lemon," the hearing record did not provide a reasonable basis for the absent members to evaluate the evidence. *Id.* at 452, 456, 709 A.2d at 1068, 1070.

¶ 12. The trial court relied on these as well as several out-of-state cases holding that due process may require agency decision makers' personal attendance at a hearing when their decision rests in material part on *credibility* determinations. Based on this authority, the trial court found that issues of credibility — including assessments of demeanor — might have had a "material impact" on the Board's decision and that, as six of the nine members had not actually observed the witnesses, the Board's decision was constitutionally deficient. Under the *Villeneuve* standard, in other words, the credibility of one or more witnesses was "central to the decision" and the record did not therefore provide "a reasonable basis for evaluating the kind of testimony in question." *Id.* at 455, 709 A.2d at 1070.

¶ 13. The State, on appeal, does not so much dispute the legal principles articulated by the trial court as challenge its

finding that credibility assessments exerted a "material impact" on the Board's decision such that the Board's personal observation of the witnesses was essential.[7] We begin our analysis with a brief review of the principles relating to credibility assessments on which the court and parties rely, succinctly summarized by the New Hampshire Supreme Court in *In re Dell*, 668 A.2d 1024 (N.H. 1995). There, the court reaffirmed the general rule, recognized in *Lewandoski* and *Villaneuve*, that "in an administrative proceeding . . . the board may act on a written record of testimony by witnesses whom its members have not personally seen or heard." *Id.* at 1034. This general rule "may apply even in a case where experts are in conflict, when the choice of whom to believe is a function of logical analysis, credentials, data base, and other factors readily discernible to one who reads the record." *Id.* (quotations omitted); accord *Stanley v. Review Bd. of Dep't of Employ. & Training Servs.*, 528 N.E.2d 811, 813 (Ind. Ct. App. 1988) ("Generally, administrative agencies are allowed to make findings on issues of credibility without taking live testimony."); *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d 815, 823 (Tenn. Ct. App. 2005) ("An agency is not bound by the hearing officer's or administrative judge's credibility determinations and, in fact, may make its own independent credibility determinations without hearing live testimony."). As the Idaho Court of Appeals has cogently explained:

> The hearing officer's sole advantage over the Commission as a fact-finder is his ability to observe the demeanor of the witnesses. There are numerous other indicia of credibility that can be ascertained as easily from the record as from live testimony. For instance, there may be significant inconsistencies in a witness's testimony or between that testimony and other facts established at the

---

[7] The State also claims that respondent waived the due-process argument by not raising it at the hearing, but respondent could not realistically have asserted the argument until the Board issued the decision that respondent claims relies impermissibly on credibility assessments. Although, as the State observes, respondent filed a prehearing memorandum disagreeing with the State's assertion that personal rather than prefiled testimony of certain witnesses was essential, respondent in the same memorandum conceded that, "[w]hen the credibility of a witness is at stake, [respondent] agrees that live testimony is important to afford an opportunity to the trier of fact to assess demeanor, etc." Accordingly, we find no waiver.

hearing. There may be evidence indicating that the witness was biased, had a motive to lie, or was unable to perceive clearly the subject matter of the testimony. The force of other evidence may be so strong that the demeanor of a particular witness, however earnest, pales in comparison. Thus, there will be many cases where the Commission need not rely upon or accept the credibility determinations of its hearing officer.

*Dep't of Health & Welfare v. Sandoval*, 742 P.2d 992, 996 (Idaho Ct. App. 1987).[8]

■ ¶ 14. It is thus only where the determination of disputed facts "rests, in some material part, on the fact finder's assessment of [the witnesses'] credibility, as shown by their demeanor or conduct at the hearing," that the decisionmakers must be present for testimony. *Dell*, 668 A.2d at 1034 (quotations omitted); accord *State Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.*, 818 A.2d 259, 275-76 (Md. Ct. Spec. App. 2003) (agency should ordinarily defer to hearing officer's "credibility determinations to the extent they are critical to the outcome *and* they are demeanor-based, that is, they are the product of observing the behavior of the witnesses"). A number of courts have qualified this requirement even further in holding that agency findings relating to credibility may require closer judicial scrutiny only where they actually *reverse* the findings of the hearing officer. See, e.g.,

---

[8] A useful explanation of the distinction between demeanor-based credibility findings and other reliability assessments that we characterize as relating to "credibility" may also be found in *Koskela v. Willamette Industries, Inc.*, as follows:

> [D]emeanor is only one of many considerations that *may*, in a given case, bear on the weight to give to a witness's statements; meaningful credibility assessments can be and often are made on the basis of written evidence alone: If the conclusion is that a decision-maker cannot make credibility findings because he has not observed the witnesses testifying, the simple answer is that credibility (more properly weight) is determinable from a number of factors other than witness demeanor. The credibility, *i.e.*, weight, that attaches to testimony can be determined in terms of the inherent probability, or improbability of the testimony, the possible internal inconsistencies, the fact it is or is not corroborated, that it is contradicted by other testimony or evidence and finally that human experience demonstrates it is logically incredible.

978 P.2d 1018, 1028-29 (Or. Ct. App. 1999), *rev'd on other grounds by* 15 P.3d 548 (Or. 2000) (quotations, alterations, and citations omitted).

*Sandoval*, 742 P.2d at 996 ("where credibility is crucial and where first-hand exposure to the witnesses may strongly affect the outcome, [the agency] should not override the hearing officer's impressions" absent a "cogent explanation"); *Hearne v. Chicago Sch. Reform Bd. of Trustees*, 749 N.E.2d 411, 425 (Ill. App. Ct. 2001) (holding that due process requires that Board consult closely with hearing officer "where credibility is the determining factor and where as in this case the final decision making body reverses each and every credibility finding of the hearing officer"); *Stanley*, 528 N.E.2d at 814 (due-process concerns raised only where "credibility is the sole determinative factor and the review board reverses the referee's findings"); see also *State Comm'n on Human Relations*, 818 A.2d at 276 (reviewing agency should give appropriate deference to opportunity of hearing officer to observe demeanor of witnesses and should reject credibility assessments only for strong reasons); *McEwen*, 173 S.W.3d at 823 ("an agency should expect closer judicial scrutiny of its findings of fact when the agency disagrees with a hearing officer's or administrative judge's findings," particularly "disagreements . . . as to credibility determinations").

¶ 15. Analyzed in light of these principles, the trial court's finding that the Board's decision rested in material part on assessments of witness demeanor and conduct does not withstand scrutiny. The court here focused on the Board's findings relating to the credibility of the parties' respective expert witnesses, Dr. Van Meter for the State and Dr. Borgia for respondent. While explaining that it might rely on these experts for "guidance," however, the Board stressed throughout its decision that it was reviewing the "same records and materials" that were available to the experts and was drawing its own conclusions based on its members' experience and expertise.[9] See *Braun v. Bd. of Dental Examiners*, 167 Vt. 110, 115, 702 A.2d 124, 127 (1997) (observing that "[a]s a body composed primarily of dental professionals, the Board has the power to apply its own expertise in evaluating the evidence."). To the extent, furthermore, that the Board found Dr.

---

[9] In discussing the experts' testimony, the Board stressed "that the evidence presented to the Hearing Committee and to this Board is much the same as what Dr. Van Meter and Dr. Borgia examined in arriving at their opinions," that "its deliberations concentrated more on the primary evidence than on expert testimony," and that Dr. Van Meter's testimony — while helpful — "did not substitute for the close evaluation of x-rays and records."

Van Meter to be "a credible witness" it is clear that the finding was based on the fact that, as the Board explained, he did not "advocate" for any particular side but offered balanced opinions, sometime critical of respondent but not overly so, and acknowledged areas where he lacked expertise. Similarly, the Board's finding concerning Dr. Borgia's overall lack of credibility was based on the fact that, while he was compelled to concede a number of "treatment errors," he consistently refused to acknowledge any deviation from the standard of care, often retreating to the position that everyone occasionally commits such errors. It is thus readily apparent that the Board's findings concerning Dr. Borgia's lack of credibility were based principally, as the Board explained, on his "unflagging support" of respondent in the face of often damning documentary evidence, just as its finding concerning Dr. Van Meter's credibility was based upon his more cautious approach. In neither case did the Board's credibility assessments rely to any significant extent on either witness's demeanor at the hearing. Nor, to the limited extent that credibility was at issue, did the Board make any finding contrary to that of the members who were present at the hearing.

¶ 16. Although the Board made few other express findings concerning credibility, the trial court here nevertheless concluded that credibility judgments (in the sense of demeanor assessments) "ought to have played some role" in the Board's resolution of such factual disputes as whether respondent actually saw blood or whether a patient had been abandoned by respondent or simply refused to continue treatment. On the contrary, the record shows that the Board's findings were based on objective evidence assessed in light of the Board's expertise and the inherent likelihood or unlikelihood of certain events, and that subjective judgments about demeanor or conduct played little or no role in its findings. For example, in the several cases where respondent had placed reinforcing "posts" that perforated the root structure of a patient's tooth in what is called a "strip perforation," the Board found — based on its own expertise and that of the experts — that bleeding is very common when strip perforation occurs, that there would "most likely" be a blood spurt, and that respondent's consistent denial of ever having seen blood in any of his patients was "less than credible." The Board's additional finding that a certain patient had not voluntarily discontinued treatment but rather had been abandoned by respondent for nonpayment was

based, in part, on letters from the patient requesting treatment and from respondent indicating that he would be willing to resume treatment when her bill was paid. Although the Board also characterized respondent's testimony on the subject as "evasive or unresponsive," a review of the transcript shows that, in fact, respondent was not responsive to several questions or claimed to be unable to recall much that was clearly documented. Thus, we find no support for the trial court's conclusion that the Board's decision was based in material part upon demeanor assessments that required its presence at the evidentiary hearing.

## III.

██ ██ ¶ 17. Although, as discussed, we find that respondent waived any challenge to the hearing process, we agree with his additional argument that the Board improperly departed from that process when it rejected the committee's proposed decision and issued its own without affording respondent an opportunity to file exceptions to the new decision. Although the Board reached the same result as the hearing committee, its findings and conclusions were substantially greater in number and more detailed, and respondent should have been afforded an opportunity to comment on those findings and conclusions under § 811, as he was promised. See 3 V.S.A. § 811 (when a majority of the agency officials have not heard the case or read the record, the decision, if adverse to a party other than the agency, shall not be made until a proposal for decision is served and an opportunity afforded to "each party adversely affected to file exceptions and present briefs and oral argument to the officials who are to render the decision"). Although the State claims that § 811 ceased to apply when the Board read the record, the Board had plainly committed itself to the process outlined under § 811 in which respondent would be afforded an opportunity to comment on the Board's proposed decision, and respondent plainly relied on that promise in proceeding with the hearing. Accordingly, we find that the Board is estopped from refusing to comply with the statutory procedure. See *Wesco, Inc. v. City of Montpelier*, 169 Vt. 520, 523-24, 739 A.2d 1241, 1244 (1999) (government may be estopped where fair dealing and equity require it and the facts show that the aggrieved party relied to its detriment).

¶ 18. We conclude, therefore, that the matter must be remanded to the Board to afford respondent an opportunity to raise any

objections to the decision, with the exception, of course, of any claims resolved in this opinion. Thereafter, either party may pursue an appeal to the superior court raising any issue not decided herein.

*Reversed and remanded for further proceedings consistent with the views expressed herein.*