2007 VT 114



In
re Lakatos (2006-014)

 

2007
VT 114

 

[Filed
19-Oct-2007]

 

NOTICE: 
This opinion is subject to motions for reargument under V.R.A.P. 40 as well as
formal revision before publication in the Vermont Reports.  Readers are
requested to notify the Reporter of Decisions, Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801 of any errors in order that corrections may
be made before this opinion goes to press.

 

 

                                                                    2007
VT 114

 

                                                                   No.
2006-014

 

 

In re Peter A.
Lakatos, D.M.D.                                                       Supreme
Court

 

                                                                                                         On
Appeal from

                                                                                                         Washington Superior Court

 

February
Term, 2007

 

 

Helen M. Toor,
J.

 

Kaveh S. Shahi
of Cleary Shahi & Aicher, P.C., Rutland, for Petitioner-Appellee.

 

Robert H. Backus
and Hugh L. Brady, Law Clerk, Secretary of State’s Office, Montpelier, for

 
Respondent-Appellant.

 

 

PRESENT:   Reiber, C.J., Dooley, Johnson
and Skoglund, JJ., and Bent, Supr. J., 

Specially
Assigned

 







¶  1.          
REIBER, C.J.   The State of Vermont appeals from a
superior court order vacating a decision of the Vermont Board of Dental
Examiners. Following an evidentiary hearing and disciplinary recommendation by
a specially appointed hearing committee, the Board suspended respondent Peter
Lakatos, a licensed dentist, for failure to meet minimal standards of practice
in numerous instances.  After a summary affirmance by the administrative
appellate officer, respondent appealed to the superior court, asserting that
(1) the hearing committee utilized by the Board lacked statutory authority, (2)
the Board violated his due-process rights by rendering a decision despite the
absence of some members from the evidentiary hearing, (3) the evidence was
insufficient to support the findings of unprofessional conduct, and (4) the
sanctions imposed were arbitrary and capricious.  The court agreed with the
procedural and due-process claims, and accordingly vacated the decision and
remanded for a new hearing without reaching respondent’s  additional
arguments.  On appeal, the State contests the court’s conclusions and contends
that respondent waived the claims in any event.  For the reasons set forth
below, we reverse and remand.

¶ 
2.          
The
material facts may be briefly summarized.[1] 
Respondent, an experienced dentist, practiced in Massachusetts for twenty years
before moving to Vermont, where he renewed his practice in 1996.  Respondent
claims expertise in a number of practice areas, including endodontics, or the
treatment of diseases relating to the tooth root and surrounding areas, which
comprises about twenty-five percent of his practice.  In October 2001, the
Board of Dental Examiners, through the Office of the Attorney General acting as
general counsel, filed a specification of charges against respondent containing
a number of counts of unprofessional conduct, including one in connection with alleged
improper bridge work, four relating to improperly performed root canals or post
placements, and one alleging abandonment of a patient.[2] 








¶ 
3.          
Following
an exchange of memoranda and motions among the parties and Board counsel
relating to the time necessary for presentation of the case and the adequacy of
pre-filed testimony, Board counsel sent the parties a letter in April 2002,
outlining the procedure which the Board had determined to follow and the dates
for the scheduled hearing. Counsel stated that the Board had “decided to
proceed under 3 V.S.A. § 811,”[3] explaining
that an evidentiary hearing would be held before a  “Board hearing committee”
with three members—a dentist, dental hygienist, and  lay person, assisted by a
presiding officer—who would then file a proposal for decision with the Board. 
The letter indicated that the parties would have an opportunity to discuss the
hearing procedure at a previously scheduled prehearing conference in late May
unless a more immediate response was required.  Following the prehearing
conference, Board counsel issued a memorandum reaffirming the hearing-committee
procedure previously outlined and explaining in addition that the parties would
have an  “opportunity to file exceptions and present briefs and argument”
concerning the proposed decision with the Board, which would consist of the
hearing committee plus additional members necessary to reach a quorum of at
least five.  It was further agreed that the committee would not make a
recommendation on sanctions.







¶ 
4.          
The
hearing committee held an evidentiary hearing over the course of four days from
July to October 2002.  It issued a report and proposal for decision in December
2002, concluding  that respondent had failed to meet the standards of practice
on six of the eight counts alleged.[4]  The report
contained numerous findings and conclusions, and respondent filed extensive
exceptions and a brief with the Board, which held oral argument in February
2003. Thereafter, in July 2003, the Board—comprising the three
hearing-committee members plus six additional members (four dentists, one
dental hygienist, and one public member)—issued a lengthy decision containing
exhaustive findings and conclusions with citations to the evidentiary record.  
Although the Board declined to adopt the committee’s proposed decision, it
unanimously concluded—like the committee—that respondent had failed to comport
with dental standards of practice on each of the substantive counts alleged,
and had therefore committed unprofessional practice under the statutes and
regulations governing the practice of dentistry.  Although the parties
subsequently reached a stipulation concerning sanctions, the Board rejected the
stipulation, heard oral argument, and issued a sanction order suspending
respondent from the practice of dentistry for six months, imposing a number of
conditions for reinstatement, and requiring a two-year period of supervision by
a licensed dentist following reinstatement.  An appellate officer affirmed, and
respondent then appealed to the superior court.[5]  
3 V.S.A. § 130a.  







¶ 
5.          
As
noted, the trial court reversed the Board’s decision and remanded for a new
hearing, concluding that the hearing-committee procedure utilized by the Board
was not authorized by state law, and that the Board had violated respondent’s
due-process rights by rendering a decision without having personally attended
the evidentiary hearing.  The court did not, therefore, reach respondent’s
claims that the evidence failed to support the finding of unprofessional
conduct, and that the sanctions were arbitrary and capricious.  This appeal
followed.[6]             

                                                                             I.

¶ 
6.          
The
State contends the court erred in determining that the hearing-committee
procedure was contrary to law, and asserts that respondent waived the claim in
any event.  We have held  that, by failing to object and actively participating
in an administrative proceeding, parties may waive any objection to a process
which may not take “the exact form required by statute but which, nevertheless,
is in substantial compliance therewith.”  In re Burlington Elec. Dep’t,
141 Vt. 540, 545, 450 A.2d 1131, 1134 (1982); accord Smith v. Brattleboro
Reformer, Inc., 147 Vt. 303, 304, 515 A.2d 1056, 1057-58 (1986).  A “[p]rocess
prohibited by law,” however, is void and may not “be cured by waiver, consent
or agreement.”  Burlington Elect. Dep’t, 141 Vt. at 545, 450 A.2d
at 1134.







¶  7.          
 As
the trial court noted, the statutory scheme does not “specifically authorize[]”
the creation of a hearing committee of the kind utilized here.  It does not
necessarily follow, however, that the process followed by the Board was “prohibited
by law” or beyond the ability of the parties to “cure[] by waiver, consent or
agreement.”  Id.  To be sure, 3 V.S.A. § 129(f), which  authorizes the
appointment of a hearing officer to conduct a hearing that would otherwise be
heard by the Board, does not similarly provide for the appointment of a hearing
committee comprising less than a quorum of the Board.  Under 3 V.S.A. § 811,
however, a party adversely affected by a proposed administrative decision is
entitled to certain additional procedural protections when “a majority of the
officials of the agency who are to render the final decision have not heard the
case or read the record.”  These include the right to notice of the proposed
decision and the opportunity to “file exceptions and present briefs and oral
argument” to the agency rendering the decision.  Id.  Although this
section does not expressly refer to the appointment of a hearing committee, its
reference to circumstances in which less than a “majority” of the
decisionmaking agency has heard the case or read the record plainly
contemplates hearings before a minority of the Board, as occurred here. This
was the Board’s reading of the provision as well, and we traditionally defer to
an agency’s interpretation of its enabling legislation absent a “compelling
indication” to the contrary.  Lemieux v. Tri-State Lotto Comm’n, 164 Vt. 110, 112-13, 666 A.2d 1170, 1172 (1995).  Petitioner here has identified no “compelling”
basis to conclude that the Board misconstrued its authority or that the procedure
it employed was contrary to any policy or provision of the Administrative
Procedure Act or the Board of Dental Examiners or deprived petitioner of any
statutory or constitutional rights.







¶ 
8.          
Accordingly,
we discern no basis to conclude that the hearing-committee procedure was “prohibited
by law” such that a finding of waiver or acquiescence by the parties would “nullify
the statute prohibiting it.”  Burlington Elec. Dep’t, 141 Vt. at 545, 450 A.2d at 1134.  The record, moreover, leaves no doubt that petitioner waived
any challenge to the procedure by failing to raise an objection at any point
during the hearing process in which he actively participated.  See id.
at 546-7, 450 A.2d at 1134-35 (holding that party who was alerted to allegedly
defective hearing procedure utilized by the Public Service Board and raised no
objection throughout the lengthy hearing “amount[ed] to a waiver of any
deficiencies in the procedures adopted by the Board”). It is undisputed that,
as noted, the Board informed the parties by letter, dated April 29, 2002, of
its decision “to proceed under 3 V.S.A. § 811” pursuant to which a three-member
committee and a presiding officer would hear the evidence, make findings and
conclusions, and file a proposed decision with the full Board, to which the
parties would than have an opportunity to file exceptions and present
argument.  The letter invited comment, either immediately or at a prehearing
conference scheduled in late May 2002.  Following the  conference, the
presiding officer issued an order, dated May 31, 2002, again summarizing the
procedure.  No objections by the parties were noted.

¶ 
9.          
Thereafter,
the committee held four days of evidentiary hearings from July through October
2002.  On more than one occasion during these hearings the presiding officer
re-summarized the procedures adopted by the Board and invited questions or
comments on the process. Although petitioner raised other issues, he never once
questioned or objected to the hearing-committee procedure itself, argued that
it was unauthorized, or claimed that it deprived him of due process.  In these
circumstances, we have no difficulty concluding that petitioner’s direct and
active participation in proceedings that lasted several months, and failure to
raise any objection despite numerous opportunities to do so, amounted to a
waiver of any objection.  The admonition in Burlington Electric Dep’t,
141 Vt. at 547, 450 A.2d at 1135, applies with equal force here: “We will not
permit a party thus to bide its time for months during complex, lengthy, and
expensive proceedings, and then attempt an ambush when those proceedings draw
to a close.”

 







                                                                            II.

¶  10.             The State also
challenges the trial court’s conclusion that petitioner was denied due process
of law because a majority of the Board was not present during the evidentiary
hearings.  As the trial court correctly perceived, the issue is governed
largely by two decisions of this Court. In Lewandoski v. Vermont State
Colleges, 142 Vt. 446, 448, 457 A.2d 1384, 1385 (1983), we considered an
employee’s claim that he was denied due process in a grievance proceeding by
the failure of all of the members of the Vermont Labor Relations Board to
attend all of the hearings.  In rejecting the claim, we expressed agreement
with the “majority of cases hold[ing] that in order to comply with due process
it is only required that members not present when testimony is taken review the
testimony before participating in the decision.”  Id. at 452-53, 457
A.2d at 1387.  We noted, however, that a quorum of the administrative officers
had, in fact, been present throughout the proceedings.  Id. at 453, 457
A.2d at 1388.







¶ 
11.      
  We
revisited the issue more recently in In re Villeneuve, 167 Vt. 450, 709 A.2d 1067 (1998).  There the defendant Ford Motor Company appealed from a
decision of the New Motor Vehicle Board in favor of a consumer, claiming that
it was denied due process because three of the five voting members of the Board
had not attended the evidentiary hearing.  After reviewing and reaffirming our
decision in Lewandoski, we observed that its “holding is similar to that
of most courts that have considered the question, at least where the
credibility of one or more witnesses is not central to the decision.”  Villeneuve,
167 Vt. at 455, 709 A.2d at 1070.  We cautioned, however, that “due process
does require the decision maker’s personal presence at evidentiary hearings
where the agency involved elects to make factual determinations as a hearing
panel and the record does not provide a reasonable basis for evaluating the
kind of testimony in question.”  Id. (internal citation omitted). 
Applying this test, we agreed with the trial court that, because the Board
members present at the hearing had both “viewed the vehicle and test drove it”
and their observations had played an “important” role in the Board’s finding
that the vehicle was not a “lemon,” the hearing record did not provide a
reasonable basis for the absent members to evaluate the evidence.  Id. at 452, 456, 709 A.2d at 1068, 1070.

¶ 
12.      
  The
trial court relied on these as well as several out-of-state cases holding that
due process may require agency decision makers’ personal attendance at a
hearing when their decision rests in material part on credibility
determinations.  Based on this authority, the trial court found that issues of
credibility—including assessments of demeanor—might have had a “material impact”
on the Board’s decision and that, as six of the nine members had not actually
observed the witnesses, the Board’s decision was constitutionally deficient. 
Under the Villeneuve standard, in other words, the credibility of one or
more witnesses was “central to the decision” and the record did not therefore
provide “a reasonable basis for evaluating the kind of testimony in question”  Id. at 455, 709 A.2d at 1070.







¶ 
13.      
  The
State, on appeal, does not so much dispute the legal principles articulated by
the trial court as challenge its finding that credibility assessments exerted a
“material impact” on the Board’s decision such that the Board’s personal
observation of the witnesses was essential.[7] 
We begin our analysis with a brief review of the of the principles relating to
credibility assessments on which the court and parties rely, succinctly
summarized by the New Hampshire Supreme Court in In re O’Dell, 668 A.2d
1024 (N.H. 1995).  There, the court reaffirmed the general rule, recognized in Lewandoski
and Villaneuve, that “in an administrative proceeding . . .  the board
may act on a written record of testimony by witnesses whom its members have not
personally seen or heard.”  Id. at 1034. This general rule “may even
apply in a case where experts are in conflict, when the choice of whom to
believe is a function of logical analysis, credentials, data base, and other
factors readily discernible to one who reads the record.”  Id. at 1034;
accord Stanley v. Review Bd. of Dep’t of Employ. & Training
Servs., 528 N.E.2d 811, 813 (Ind. Ct. App. 1988) (“Generally,
administrative agencies are allowed to make findings on issues of credibility
without taking live testimony.”); McEwen v. Tenn. Dep’t of Safety, 173
S.W.3d 815, 823 (Tenn. Ct. App. 2005) (“An agency is not bound by the hearing
officer’s or administrative judge’s credibility determinations and, in fact,
may make its own independent credibility determinations without hearing live
testimony.”).  As the Idaho Court of Appeals has cogently explained:

The hearing officer’s sole advantage over
the Commission as a fact-finder is his ability to observe the demeanor of the
witnesses.  There are numerous other indicia of credibility that can be
ascertained as easily from the record as from live testimony.  For instance,
there may be significant inconsistencies in a witness’s testimony or between
that testimony and other facts established at the hearing.  There may be
evidence indicating that the witness was biased, had a motive to lie, or was
unable to perceive clearly the subject matter of the testimony.  The force of
other evidence may be so strong that the demeanor of a particular witness,
however earnest, pales in comparison.  Thus, there will be many cases where the
Commission need not rely upon or accept the credibility determinations of its
hearing officer.   

 







Dep’t of Health &
Welfare v. Sandoval,
742 P.2d 992, 996 (Idaho Ct. App. 1987).[8]







¶ 
14.      
  It
is thus only where the determination of disputed facts “rests, in some material
part, on the fact finder’s assessment of [the witness’] credibility, as shown
by their demeanor or conduct at the hearing,” that the decisionmakers must be
present for testimony.  O’Dell, 668 A.2d at 1034; accord Md. Comm’n
on Human Relations v. Kaydon Ring & Seal, Inc., 818 A.2d 259, 276 (Md.
Ct. Spec. App. 2003) (agency should ordinarily defer to hearing officer’s “credibility
determinations to the extent they are critical to the outcome and they
are demeanor-based, that is, they are the product of observing the behavior of
the witnesses”).  A number of courts have qualified this requirement even
further in holding that agency findings relating to credibility may require
closer judicial scrutiny only where they actually reverse the findings
of the hearing officer.  See, e.g., Sandoval, 742 P.2d at 996 (“where
credibility is crucial and where first-hand exposure to the witnesses may
strongly affect the outcome, [the agency] should not override the hearing
officer’s impressions” absent a “cogent explanation” ); Hearne v. Chicago
Sch. Reform Bd. of Trustees, 749 N.E.2d 411, 425 (Ill. App. Ct. 2001)
(holding that due process requires that Board consult closely with hearing
officer “where credibility is the determining factor and where as in this case
the final decision making body reverses each and every credibility finding of
the hearing officer”); Stanley, 528 N.E.2d at 814 (due-process concerns
raised only where “credibility is the sole determinative factor and the review
board reverses the referee’s findings”); see also Md. Comm’n on Human
Relations, 818 A.2d at 276 (reviewing agency should give appropriate
deference to opportunity of hearing officer to observe demeanor of witnesses
and should reject credibility assessments only for strong reasons); McEwen,
173 S.W.3d at 823 (“an agency should expect closer judicial scrutiny of its
findings of fact when the agency disagrees with a hearing officer’s or
administrative judge’s findings,” particularly “disagreements . . . as to
credibility determinations”).







¶ 
15.      
  Analyzed
in light of these principles, the trial court’s finding that the Board’s
decision rested in material part on assessments of  witness demeanor and
conduct does not withstand scrutiny.  The court here focused on the Board’s
findings relating to the credibility of the parties’ respective expert
witnesses, Dr. Van Meter for the State and Dr. Borgia for petitioner.  While
explaining that it might rely on these experts for “guidance,” however, the
Board stressed throughout its decision that it was reviewing the “same records
and materials” that were available to the experts and was drawing its own
conclusions based on its members’ experience and expertise.[9] 
See Braun v. Bd. of Dental Examiners, 167 Vt. 110, 115, 702 A.2d 124,
127 (1997) (observing that “[a]s a body composed primarily of dental
professionals, the Board has the power to apply its own expertise in evaluating
the evidence”).  To the extent, furthermore, that the Board found Dr. Van Meter
to be “a credible witness” it is clear that the finding was based on the fact
that, as the Board explained, he did not “advocate” for any particular side but
offered balanced opinions, sometime critical of petitioner but not overly so,
and acknowledged areas where he lacked expertise.  Similarly, the Board’s
finding concerning Dr. Borgia’s overall lack of credibility was based on the
fact that, while he was compelled to concede a number of “treatment errors,” he
consistently refused to acknowledge any deviation from the standard of care,
often retreating to the position that everyone occasionally commits such errors. 
It is thus readily apparent that the Board’s findings concerning Dr. Borgia’s
lack of credibility were based principally, as the Board explained, on his “unflagging
support” of respondent in the face of often damning documentary evidence, just
as its finding concerning Dr. Van Meter’s credibility was based upon his more
cautious approach.  In neither case did the Board’s credibility assessments
rely to any significant extent on either witness’s demeanor at the hearing. 
Nor, to the limited extent that credibility was at issue, did the Board make
any finding contrary to that of the members who were present at the hearing.







¶ 
16.      
  Although
the Board made few other express findings concerning credibility, the trial
court here nevertheless concluded that credibility judgments (in the sense of
demeanor assessments) “ought to have played some role” in the Board’s
resolution of such factual disputes as whether petitioner actually saw blood or
whether a patient had been abandoned by respondent or simply refused to
continue treatment.  On the contrary, the record shows that the Board’s
findings were based on objective evidence assessed in light of the Board’s
expertise and the inherent likelihood or unlikelihood of certain events, and
that subjective judgments about demeanor or conduct played little or no role in
its findings.  For example, in the several cases where respondent had placed
reinforcing “posts” that perforated the root structure of a patient’s tooth in
what is called a “strip perforation,” the Board found—based on its own
expertise and that of the experts—that bleeding is very common when strip
perforation occurs, that there would “most likely” be a blood spurt, and that
respondent’s consistent denial of ever having seen blood in any of his patients
was “less than credible.”  The Board’s additional finding that a certain
patient had not voluntarily discontinued treatment but rather had been
abandoned by respondent for nonpayment was based, in part, on letters from the
patient requesting treatment and from respondent indicating that he would be
willing to resume treatment when her bill was paid.  Although the Board also
characterized respondent’s testimony on the subject as “evasive or
unresponsive,” a review of the transcript shows that, in fact, respondent was
not responsive to several questions or claimed to be unable to recall much that
was clearly documented.  Thus, we find no support for the trial court’s
conclusion that the Board’s decision was based in material part upon demeanor
assessments that required its presence at the evidentiary hearing.

                                                                           III.







¶ 
17.      
  Although,
as discussed, we find that respondent waived any challenge to the hearing
process, we agree with his additional argument that the Board improperly
departed from that process when it rejected the committee’s proposed decision
and issued its own without affording respondent an opportunity to file
exceptions to the new decision.  Although the Board reached the same result as
the hearing committee, its findings and conclusions were substantially greater
in number and more detailed, and respondent should have been afforded an
opportunity to comment on those findings and conclusions under § 811, as he was
promised.  See 3 V.S.A. § 811 (when a majority of the agency official have not
heard the case or read the record, the decision, if adverse to a party other
than the agency, shall not be made until a proposal for decision is served and
an opportunity afforded to “each party adversely affected to file exceptions
and present briefs and oral argument to the officials who are to render the
decision”).  Although the State claims that § 811 ceased to apply when the
Board read the record, the Board had plainly committed itself to the process
outlined under § 811 in which respondent would be afforded an opportunity to
comment on the Board’s proposed decision, and respondent plainly relied on that
promise in proceeding with the hearing.  Accordingly, we find that the Board is
estopped from refusing to comply with the statutory procedure.  See Wesco,
Inc. v. City of Montpelier, 169 Vt. 520, 523-24, 739 A.2d 1241, 1244 (1999)
(government may be estopped where fair dealing and equity require it and the
facts show that the aggrieved party relied to its detriment). 

¶ 
18.      
  We
conclude, therefore, that the matter must be remanded to the Board to afford
respondent an opportunity to raise any objections to the decision, with the
exception, of course, of any claims resolved in this opinion.  Thereafter,
either party may pursue an appeal to the superior court raising any issue not
decided herein.   

Reversed and remanded
for further proceedings consistent with the views expressed herein. 

 

FOR THE COURT:

 

 

 

_______________________________________

Chief Justice

 





[1]   Because the trial court did not
address respondent’s claims concerning the sufficiency of the evidence and the
propriety of the sanctions imposed, we need not discuss in detail the facts
underlying the allegations of unprofessional conduct except where relevant to
the procedural and due-process claims.   





[2]   In November 2002, the State added an
additional count alleging improper root-canal work.





[3]  This statute in part provides:  

 

When
in a contested case a majority of the officials of the agency who are to render
the final decision have not heard the case or read the record, the decision, if
adverse to a party to a proceeding other than the agency itself, shall not be
made until a proposal for decision is served upon the parties, and an
opportunity afforded to each party adversely affected to file exceptions and
present briefs and oral argument to the officials who are to render the
decision.  





[4]   One of the counts had been previously
dismissed by stipulation of the parties and another  general count was dismissed
by the committee as “duplicative.”





[5]  The appellate officer initially
reversed and remanded the matter for the Board’s alleged failure to comply with
3 V.S.A. § 811, but subsequently reversed himself, finding that the statute was
inapplicable because the Board members who did not attend the hearing had read
the record.





[6]  Respondent has moved to dismiss the
appeal on the ground that the State is not a party that may appeal the superior
court’s ruling.  The assertion is unpersuasive.  The statutory scheme governing
appeals from professional boards such as the Board of Dental Examiners provides
that a “party aggrieved” by a final decision of a board may appeal to the
director and have the matter heard by an appellate officer.  3 V.S.A. § 130a. 
Thereafter, a “party aggrieved” by the decision of the appellate officer may
appeal to the superior court.  Id.  The State, as the prosecuting
agency, was plainly a party to the proceedings and as such would have been
entitled to pursue an administrative appeal and an appeal to the superior
court, and was further entitled to appeal from an adverse ruling by the
superior court to this Court.  See Office of Prof’l Reg. v. McElroy,
2003 VT 31, ¶ 1, 175 Vt. 507, 824 A.2d 567 (after appellate officer reversed
Real Estate Commission decision, State appealed to the superior court, which
reversed and reinstated Commission decision); In re Smith, 169 Vt. 162,
164, 730 A.2d 605, 607 (1999) (after superior court reversed disciplinary
decision of the Board of Nursing, the State appealed to this Court, which
reversed the superior court and reinstated the Board’s decision).





[7]   The State also claims that petitioner
waived the due-process argument by not raising it at the hearing, but petitioner
could not realistically have asserted the argument until the Board issued the 
decision that petitioner claims relies impermissibly on credibility
assessments.  Although, as the State observes, petitioner filed a prehearing
memorandum disagreeing with the State’s assertion that personal rather than
pre-filed testimony of certain witnesses was essential, petitioner in the same
memorandum conceded that, “[w]hen the credibility of a witness is at stake,
[petitioner] agrees that live testimony is important to afford an opportunity
to the trier of fact to assess demeanor, etc.” Accordingly, we find no waiver.





[8]    A useful explanation of the
distinction between demeanor-based credibility findings and other reliability
assessments that we characterize as relating to “credibility” may also be found
in Koskela v. Willamette Industries, Inc., as follows:

 

[D]emeanor is only one of many
considerations that may, in a given case, bear on the weight to give to
a witness’s statements; meaningful credibility assessments can be and often are
made on the basis of written evidence alone: If the conclusion is that a
decision-maker cannot make credibility findings because he has not observed the
witnesses testifying, the simple answer is that credibility (more properly
weight) is determinable from a number of factors other than witness demeanor. 
The credibility, i.e., weight, that attaches to testimony can be determined in terms
of the inherent probability, or improbability of the testimony, the possible
internal inconsistencies, the fact it is or is not corroborated, that it is
contradicted by other testimony or evidence and finally that human experience
demonstrates it is logically incredible.

 

978 P.2d 1018, 1028-29 (Or. Ct. App.
1999), rev’d on other grounds by 15 P.3d 548 (Or. 2000) (quotations,
alterations, and citations omitted).





[9]  In discussing the experts’ testimony,
the Board stressed “that the evidence presented to the Hearing Committee and to
this Board is much the same as what Dr. Van Meter and Dr. Borgia examined in
arriving at their opinions,” that “its deliberations concentrated more on the
primary evidence than on expert testimony,” and that Dr. Van Meter’s testimony—
while helpful—“did not substitute for the close evaluation of x-rays and
records.”