### In re Burlington Electric Department

[450 A.2d 1131]

No. 528-81

Present: **Barney, C.J., Billings, Hill and Underwood, JJ., and Shangraw, C.J. (Ret.), Specially Assigned**

Opinion Filed August 31, 1982

*Joseph E. McNeil, Robert E. Fletcher,* and *Nancy G. Shea-han* of *McNeil, Murray & Sorrell, Inc.,* for Petitioner-Appellee.

*William E. Wargo,* City Attorney, Winooski, for Appellant City of Winooski.

**Underwood, J.** The City of Winooski (Winooski) appeals a Public Service Board (Board) order awarding a certificate of public good for the construction of a 50-megawatt wood-fired electric generating plant by its neighbor, the City of Burlington (Burlington), pursuant to 30 V.S.A. § 12. The need for any electric generating station and the impact of this plant in particular were hotly contested by Burlington and its allies on one side, and by the State, Winooski and other intervenors on the other side. The hearings on these issues stretched over several months.

This appeal, however, does not challenge the substance of the Board's order. Rather, it focuses on procedural

aspects of the case. Winooski makes two arguments. It first attacks the validity of the Chittenden County Regional Planning Commission's (CCRPC) waiver of its statutory right to review the plans for the plant 45 days before the application for a certificate of public good is submitted to the Board. 30 V.S.A. § 248(d). Our review of the record, however, discloses ample support for the Board's finding that the review period was waived. The CCRPC, by word and deed, repeatedly demonstrated an intent to waive the full 45 days' advance notice. The Board's findings are to be accepted unless clearly erroneous. 30 V.S.A. § 11(b). Since no clear error appears, the Board's findings must stand.

Winooski's second claim of error is that the Board's certificate of public good is invalid because no quorum was present at many of the hearings where evidence was received upon which the Board later based its findings. Winooski points to the hearing notices, which indicate that the various hearings were to be held before the Board. It then resorts to 30 V.S.A. § 7, which states "[t]wo board members shall constitute a quorum for the transaction of any business." Since many of the hearings were conducted by a single member, Winooski concludes that the absence of a quorum deprived the Board of jurisdiction to conduct the hearings and makes invalid any order based on hearings conducted outside the Board's jurisdiction. We disagree.

In the determination and adjudication of all matters over which it is given jurisdiction the Board has the powers of a court of record. 30 V.S.A. § 9.

"[I]n order for a court to try and determine a cause, it must have jurisdiction of the subject-matter, of the process and of the person." *Howe* v. *Lisbon Savings Bank & Trust Co.*, 111 Vt. 201, 207, 14 A.2d 3, 6 (1940). "The power of the court, as to person and process, may be conferred by waiver and consent. But the power of the court to deal with the subject matter of the controversy can be generated only by force of law. It is unaffected by agreement or conduct of the parties." *Lafko* v. *Lafko*, 127 Vt. 609, 612, 256 A.2d 166, 168 (1969).

No electric generating plant may be constructed in Vermont unless the Board first finds, after hearing, that the

plant will promote the general good of the state, and issues a certificate to that effect. 30 V.S.A. § 248(a). The statute thus clearly confers subject matter jurisdiction on the *Board* to inquire into and determine Burlington's petition for a certificate of public good. See 30 V.S.A. § 11(b). It is also plain that 30 V.S.A. § 8 empowers a single Board member to conduct hearings into the subject matter involved here, despite the mandate of 30 V.S.A. § 7 that a quorum of the Board render the decision. *Vermont Electric Power Co.* v. *Bandel,* 135 Vt. 141, 146–47, 375 A.2d 975, 979 (1977). 30 V.S.A. § 8 provides:

> One board member . . . duly appointed by the chairman of the board may inquire into and examine any matter within the jurisdiction of the board. . . . He may hold any hearing in any matter within the jurisdiction of the board to hear . . . .

Winooski argues that this portion of the statute does not apply in the present case because the Board failed to conform to the procedural requisites mandated by the last part of the statute, and these procedures are necessary to trigger one-member hearing jurisdiction. That part of 30 V.S.A. § 8 provides:

> At least 12 days prior to the hearing, the board shall give written notice of the time and place of the hearing to all parties to the case and shall indicate the name and title of the person designated to conduct the hearing. Upon written request to the board at least five days prior to the hearing by all parties to the case, the chairman shall appoint at least a majority of the board to conduct the hearing.

The record contains nothing to indicate that a single Board member was ever duly appointed by the chairman, who resigned midway during the proceedings, or that there was even an acting chairman thereafter who could make the appointments. Some of the hearings were noticed less than 12 days prior to the date they were scheduled. All notices indicated that the hearing would be conducted by the full Board, rather than a "duly appointed" hearing examiner. Thus there was no opportunity to muster, five days before the hear-

ing, the unanimous written request of the parties to be heard by a quorum of the Board.

■■ But these shortcomings affect process, not subject matter jurisdiction. It is true, as we noted in the *Howe* case, that the fact that a court of record has subject matter jurisdiction of the matter before it is not, without more, a sufficient basis for the exercise of its powers.

> [I]t cannot exercise this authority of its own motion. The parties and their case must be brought before it. This is accomplished by the use of process. It is in this way that the court is empowered to exercise its . . . authority and so when we state that process confers jurisdiction we mean that it empowers the court to exercise authority derived from law. This authority is passive in nature until it is made active by process or something which the law permits to perform the function of it, as in the case . . . where waiver and agreement took the place of process.

*Howe* v. *Lisbon Savings Bank & Trust Co.*, *supra*, 111 Vt. at 207–08, 14 A.2d at 6.

■■ Thus the issue here is clearly limited to the adequacy of the process involved. The *Howe* case elaborates in great detail on the varieties of defective process. Two broad categories are there identified—voidable process and void process. The former is "[p]rocess which is defective because not in the exact form required by statute but which, nevertheless, is in substantial compliance therewith." *Id.* at 213, 14 A.2d at 8. "[I]t is valid until attacked, and an amendment is allowable where the process, although irregular, is sufficient to give jurisdiction . . . ." *Id.* at 208, 14 A.2d at 5. The utter failure of the process here involved to conform to the statute takes it out of this category.

The second category of defective process—void process—consists of two kinds: (1) "Process prohibited by law is void. A defect of this kind cannot be cured by waiver, consent or agreement. To permit this would be to nullify the statute prohibiting it." *Id.* at 213, 14 A.2d at 8. Winooski argues in effect that the deficiencies of process are of this type. This

would clearly be the case if the two-member quorum requirement of 30 V.S.A. § 7 stood alone. The legislature, however, also enacted 30 V.S.A. § 8, giving a single member authority to hear this case. Thus the attempt to bring the matter before a single member, and the defective process here involved, is not prohibited by law.

■ Rather, we believe the defects present here put this process in the second category of void process: "Process which is not in substantial compliance with statutory requirement or requirements is void, although not prohibited by law. Such process cannot be amended but the defect may be waived and when this is done, in so far as it affects jurisdiction, the court is enabled to function." *Id.* at 213, 14 A.2d at 8.

The record here requires the conclusion that Winooski has, by its action and conduct, waived any shortcomings in the statutory procedures and effectively consented to the defective procedures utilized by the Board. From the very outset, at a prehearing conference, the parties were alerted to the possibility that the complexity of the issues and the consequent need for many days of hearing might require that on occasion some hearing dates be presided over by a single member. Winooski made no attempt to insist upon adherence to the statutory notice provisions. As the hearings developed, single-member hearings increased in frequency without objection by any of the parties, including Winooski.

Finally, after 22 days of hearings, the matter was raised, not by Winooski, but by the State, in the following colloquy:

> State: Madam chairman, just so there will be no doubt, I don't believe that all of the parties have stipulated to this being heard by one Board member on an on-going basis. And so that we'll not be wasting our time here today, perhaps it would be helpful if any and all parties who might object were to state that they do not object at this time.

> Board member: That is a good suggestion. I guess I was under the impression, since we have done this before, that — — —

State: Not on an on-going basis. . . . [I]t was not done for the full run of the hearings.

Board member: Then I will ask if there is any objection to having the hearings heard from time to time by one Board member when it's impossible for the other two to be present. . . .

The Board member then polled the parties, including Winooski, and all responded, "no objection."

It appears from the record that hearing dates presided over by a single member were the rule rather than the exception thereafter without objection by any party until March 12, 1981. Then, with but a few more days of hearings scheduled, Winooski objected to a single member presiding where the notice indicated that hearings would be conducted by the full Board.

On these facts, we conclude that Winooski simply struck too late. Its consent on the record to proceedings conducted by a single member and its silence, stretching over many months, amount to a waiver of any deficiencies in the procedures adopted by the Board. We will not permit a party thus to bide its time for months during complex, lengthy, and expensive proceedings, and then attempt an ambush when those proceedings draw to a close.

*Affirmed.*