### Rodney E. Myers and Corrine V. Myers v. Leon H. Brown and Beverly J. Brown and Auto-Tune, Inc.

[465 A.2d 254]

No. 548-81

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed June 7, 1983

160

*Robert W. Eastman* and *Neil D. Wheelwright* of *Latham, Eastman, Schweyer & Tetzlaff*, Burlington, for Plaintiffs-Appellees.

*Perry & Schmucker*, South Burlington, for Defendant-Appellant Auto-Tune, Inc.

Billings, C.J. This is an appeal by defendant, Auto-Tune, Inc., from a denial of a motion for relief from default judgment, pursuant to V.R.C.P. 60(b)(6). The issue presented is whether a party who has actual knowledge of a lawsuit against him, but who has been improperly served with process, may take no action in defense of the lawsuit, allow a default judgment to be entered against him, and then seek to have that judgment set aside by bringing a motion for relief under V.R.C.P. 60(b)(6). Defendant argues that, in refusing to disturb the default judgment, the trial court either withheld its discretion or exercised it unreasonably, and thus seeks our reversal. *Miller* v. *Ladd*, 140 Vt. 293, 297–98, 437 A.2d 1105, 1108 (1981).

After a full evidentiary hearing on the defendant's Rule

60(b) motion, the trial court found the following facts. On July 2, 1976, Rodney and Corrine Myers, plaintiffs-appellees, leased commercial property at 4 Main Street, Winooski, Vermont, to Leon and Beverly Brown, defendants below, who ran an auto repair business on the premises. The lease was drafted by Russell F. Niquette, Jr., Esquire, and although the Browns maintain that Attorney Niquette acted at all times as their lawyer in this matter, the evidence indicates that the plaintiffs were frequently under the impression that Attorney Niquette was representing them as well. The lease was for a term of five years, and contained a purchase option. The lease further prohibited subletting or assignment without the prior written consent of the lessors, with the following exception:

> [T]he Lessees shall have the right to assign this lease without the written consent of the Lessors at any time during the term hereof to a corporation formed by the Lessees, and with at least one Lessee as an officer for the purpose of doing the business engaged in by the Lessees, except that the within Lessees shall remain at all times individually responsible for all payments in default of said assignee.

On August 20, 1979, the Browns executed an Assignment of Lease to Auto-Tune, Inc., a Vermont corporation which they had formed a short time prior to this assignment. In the Articles of Incorporation filed with the Secretary of State's Office in August of 1979, Attorney Niquette was listed as the corporation's registered agent, and Mr. and Mrs. Brown as president and vice-president, its only officers. On behalf of the Browns, Attorney Niquette sent a copy of this assignment to plaintiffs in early September, 1979. Mr. Myers replied to Attorney Niquette as follows: "As per our phone conversation this day I will take your word as my attorney—this transaction does not alter my original lease with Mr. Brown. /s/ Rod."

Shortly thereafter, on October 1, 1979, Mr. and Mrs. Brown resigned as officers of Auto-Tune, Inc., and sold all corporate stock to Attorney Niquette and his brother, who took over as sole officers and directors. From conflicting evidence, the trial court found that plaintiffs received no written notice from defendants concerning this change in ownership, and that the corporation filed no papers with the Secretary of State's Office

reflecting the change. At all relevant times, however, Attorney Niquette remained listed as the corporation's registered agent.

On February 28, 1980, an attorney newly retained to represent plaintiffs mailed a letter addressed separately to Auto-Tune, Inc., Leon H. and Beverly J. Brown, and Russell Niquette, Jr., Esq., notifying them on behalf of plaintiffs to vacate the leased Winooski premises. The letter cited four breaches of the lease: nonpayment of rent; nonpayment of taxes as required by the lease; property damage; and failure to maintain the premises. On March 12, 1980, Attorney Niquette responded by letter stating, inter alia, "that the corporation denies all averments and expects the Myers to continue to honor their commitments under the lease." This letter, written on Attorney Niquette's law office stationery, was signed simply "Russell F. Niquette, Jr."

On March 18, 1980, Attorney Niquette wrote Mr. Myers as follows:

> Dear Rod:
>
> Please be advised that the listing agreement dated December 5, 1979, wherein authority to sell the stock of Auto-Tune, Inc., is hereby withdrawn and cancelled. Randy and I plan on retaining ownership of the stock in the Corporation.
>
> /s/ Russell F. Niquette, Jr.

Attorney Niquette testified that this letter followed several months of discussion, first regarding the sale of Auto-Tune stock by the Browns to the Niquettes, and then of a potential further sale of the stock by the Niquettes. Thus, he argues this letter sufficiently indicates the Myers' awareness of the change in ownership and control of the corporation. However, according to Myers' testimony, he believed Attorney Niquette was negotiating the stock sale on behalf of the Browns, and maintained that plaintiffs had neither actual nor constructive notice that Attorney Niquette had purchased the corporation.

On June 11, 1980, plaintiffs instituted an eviction action against the Browns and Auto-Tune, Inc. On June 30, 1980, service was made upon the Browns individually, and upon Mr. Brown as president of Auto-Tune, Inc. Attorney Niquette was not served, nor was any other officer, director or agent of the

corporation. Both parties agree that within a few days of accepting such service, Brown called Attorney Niquette and informed him that he, his wife, and the corporation had been served with an eviction complaint. No appearances, motions, answers or other responsive pleadings were filed by any of the defendants within the time permitted by V.R.C.P. 12, and default judgments were entered against all defendants in September of 1980.

Attorney Niquette testified at the hearing on the Rule 60 motion as a witness for the corporation. An excerpt of his direct examination indicates why the corporation waited until after judgment to raise any jurisdictional objections:

Q: Did there come a time when you received notice that Myers wanted repossession of the premises for the lease default?

A: Yes. . . . Mr. Brown called me and told me that he had been served by a sheriff to evict him from the premises.

Q: And what was your reaction to that?

A: I told Mr. Brown that basically I didn't feel he had much to worry about inasmuch as he was not in possession of the premises and he had nothing to do with it, but the corporation would undoubtedly be served if he intended to get the corporation out.

Q: What did you do after that knowledge that the Browns had been served?

A: I did nothing.

Q: Why is that?

A: I don't believe that it's in the best interest of my corporation or my client to submit them to the jurisdiction of the Court unless they have been submitted by process.

In December of that year Attorney Niquette was served, on behalf of the corporation, with a writ of possession and ejectment arising out of the default. At that point he timely filed a motion on behalf of Auto-Tune, Inc., seeking relief from judgment pursuant to V.R.C.P. 60(b)(6), and alleging that service upon the corporation had not been made in accordance with V.R.C.P. 4(d)(7). The court denied the motion, concluding

that under the circumstances service upon Brown as prior corporate president, combined with Attorney Niquette's actual knowledge of such service as present owner, officer, director and registered agent, was sufficient to bestow jurisdiction over the corporation.

On appeal, defendant argues that V.R.C.P. 4(d)(7) sets out very specifically how service of process is to be made upon a domestic corporation, to wit: "by delivering a copy of the summons and of the complaint to an officer, a director, a managing or general agent, a superintendent, or to any other agent authorized by appointment or by law to receive service of process . . . ." Moreover, he urges, a corporation "is entitled to insist that actions against it in our courts be instituted according to the prescriptions of the applicable statute . . . ." *Berry* v. *Arnoldware-Rogers, Inc.*, 127 Vt. 188, 191, 243 A.2d 781, 783 (1968). Thus, he concludes, since no service was made upon a present officer, director or other agent authorized to receive process, the trial court never acquired jurisdiction over the defendant corporation; as such, its default judgment against Auto-Tune, Inc., must be declared void as a matter of law.

■ We agree that since Brown was no longer an officer or director of Auto-Tune, Inc., service upon him was insufficient to bind the corporation under V.R.C.P. 4(d)(7). Nevertheless, such defective service is a procedural shortcoming of the type which may be waived. As we recently stated in *In re Burlington Electric Department*, 141 Vt. 540, 450 A.2d 1131 (1982), " '[p]rocess which is not in substantial compliance with statutory . . . requirements is void, although not prohibited by law. Such process . . . may be waived and when this is done, insofar as it affects jurisdiction, the court is enabled to function.' " *Id.* at 546, 450 A.2d at 1134 (quoting *Howe* v. *Lisbon Savings Bank & Trust Co.*, 111 Vt. 201, 213, 14 A.2d 3, 8 (1940)).

■ While claims that a court lacks subject matter jurisdiction over a cause before it may be made at any time, V.R.C.P. 12(h)(3), other jurisdictional defenses must be timely raised or they are waived. In relevant part, V.R.C.P. 12(h)(1) reads as follows:

A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived . . . (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof . . . .

Defendant contends, however, that the language of V.R.C.P. 12(h)(1) contemplates a defendant who actually appears before the court and fails to so move; if a defendant does not appear and service is defective, he maintains that there is no waiver of the right to attack any subsequent judgment on jurisdictional grounds, regardless of whether the defendant had actual knowledge of the action against him. Indeed, this argument is supported by a body of federal authority. See, e.g., 2A J. Moore, Moore's Federal Practice ¶ 12.06, at 2245 and ¶ 12.23, at 2450 (2d ed. 1983); *Amen v. City of Dearborn*, 532 F.2d 554, 557 (6th Cir. 1976); *Veeck v. Commodity Enterprises, Inc.*, 487 F.2d 423, 425–26 (9th Cir. 1973); *Wyrough & Loser, Inc. v. Pelmor Laboratories, Inc.*, 376 F.2d 543, 546 and n.4 (3d Cir. 1967).

██ However, the trend in our case law is to the contrary, and compelling reasons of policy persuade us to reject defendant's arguments. As noted above, we have consistently held that parties by their conduct may waive objections to service which is void for lack of substantial compliance with legal prerequisites. *In re Burlington Electric Department, supra*. Wright & Miller's treatise on federal practice recognizes that "a defect in the service of process may not render the proceedings void, which means that the court has personal jurisdiction over defendant and an objection to the service may be waived by allowing a default and judgment to be entered." 10 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil 2d § 2695, at 505 (1983). Moreover, in a case factually reminiscent of the instant cause, we found just such a waiver and thus refused to vacate a default judgment, where a party failed to raise a claimed lack of authority to accept service by inclusion either in a responsive pleading or a Rule 12 motion. *Christiansen v. Capen*, 139 Vt. 591, 592–93, 433 A.2d 289, 290 (1981) (citing *Robbins v. Matulonis*, 136 Vt. 422, 424, 392 A.2d 399, 400 (1978)). In that case,

as in this one, defendant did not appear prior to entry of the default judgment.

■ Admittedly, in *Christiansen* we did not specifically address the question here presented by defendant: whether the Rule 12 waiver may apply to a defendant who, by virtue of improper service, never comes before the court at all prior to judgment. However, the implicit holding in *Christiansen* answered that question in the affirmative, and we take this opportunity to so hold explicitly. Wright & Miller supports such a holding. In discussing Fed. R. Civ. P. 12(h)(1), the treatise prescribes the following rules regarding waiver of jurisdictional defects: where defective service implicates constitutional rights, waiver cannot be found without running afoul of due process; however, in those cases in which a party has actual knowledge of the pending action, there are no constitutional issues at stake, and waiver is not only possible but advisable.

> Under Rule 12(h) the objection of insufficiency of service of process, . . . and the objection of lack of jurisdiction over the person, . . . are waived if not asserted in a timely answer or motion. . . . However, if a party is never served at all, he cannot be held to have waived his objection to lack of jurisdiction over the person by non-assertion within 20 days; due process would preclude the result and the rules themselves prevent it, by making the 20 day period run from the date of service. *But when the party has received actual notice of the suit there is no due process problem in requiring him to object to the ineffective service within the period prescribed by Rule 12(h)(1) and the defense is one that he certainly can waive if he wishes to do so.* His failure to do what the rule says he must do if he is to avoid a waiver might well be taken as being a waiver. Furthermore, a more permissive construction would sharply reduce the effectiveness of Rule 12(h)(1).

5 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 1391, at 857–58 (1969) (emphasis added). See 46 Am. Jur. 2d *Judgments* § 760; see also Ellington, *Unraveling Waiver By Default*, 12 Ga. L. Rev. 181, 188 (1978) ; *Zelson* v. *Thomforde*, 412 F.2d 56, 58–59 and n.8 (3d Cir. 1969) ; cf. *Schwarz* v. *Thomas*, 222 F.2d 305 (D.C. Cir. 1955).

It is clear from the record below that Attorney Niquette, acting both as counsel for defendants Brown and as putative defendant in his capacity as president, director and agent of defendant Auto-Tune, Inc., was fully aware in June of 1980 that an eviction action had been commenced against the corporation, and further that service was mistakenly made upon Mr. Brown, its former president. In addition, he knew that the plaintiffs had not been officially notified of any change in the ownership and control of Auto-Tune, Inc., and that the only documentation on record in the Secretary of State's Office listed the Browns as its sole owners and officers. Despite such knowledge, Attorney Niquette maintained his silence regarding the defect in service until after entry of the default judgment, and then sought to defeat the judgment on that basis.

It is true that plaintiffs-appellees might have been more diligent in insuring proper service on the parties. Nevertheless where, as here, there is no question but that the trial court had jurisdiction over the parties, defendant's actions only caused unnecessary delay and avoidable expense. Therefore, based on the facts and principles set forth above, we hold that, absent a failure of due process, a party who has received actual notice of a suit against him must raise all the jurisdictional objections listed in V.R.C.P. 12(h)(1) within the time and in the manner prescribed by that rule, else they are waived. The trial court properly denied the motion of defendant Auto-Tune, Inc., to set aside the default judgment.

*Affirmed.*