STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| Environmental Division Unit | Docket No. 65-5-12 Vtec |
| | 23-3-15 Vtec |

| | |
|---|---|
| Agency of Natural Resources,<br>    Petitioner<br><br>v.<br><br>Robert Colaceci,<br>    Respondent | ALTERED DECISION ON MOTION and<br>ALTERED DECISION ON THE MERITS[1] |

The present matter concerns two administrative orders (AOs) issued by the Vermont Agency of Natural Resources (ANR) for alleged violations at Respondent Robert Colaceci's used tire facility and auto repair business on Route 15 on the Wolcott/Hardwick town line. ANR issued the first AO in 2012 (the 2012 AO), and Mr. Colaceci timely requested a hearing (Docket No. 65-5-12 Vtec). ANR served the second AO on Mr. Colaceci on March 17, 2015 (the 2015 AO). Mr. Colaceci failed to request a hearing on that AO within fifteen days as required by statute. See 10 V.S.A. § 8012(c). The Court issued an order on April 16, 2015, at which point the 2015 AO became a final judicial order. See 10 V.S.A. § 8008(d)(2). After lengthy procedural delays, the Court held a hearing on the 2012 AO on May 15, 2015. On May 26, 2015, Mr. Colaceci filed a motion to reopen the 2015 AO and to dismiss both enforcement actions (Docket No. 23-3-15 Vtec). That motion, along with the merits of the 2012 AO, are now before the Court. ANR is represented by Attorney John Zaikowski in these matters. Mr. Colaceci is self-represented.

---

[1] This altered decision is in response to the Agency of Natural Resources' request to alter or amend the Court's August 19, 2016 Judgment Order and Decision on the Merits in docket number 65-5-12 Vtec. pursuant to V.R.C.P. 59(e), and to reconsider the Court's August 19, 2016 Decision on Respondent's Motion and Decision on the Merits and Judgment Order in docket numbers 65-5-12 and 23-3-15 Vtec. based on a clerical error pursuant to V.R.C.P. 60(a). Two changes are reflected in this altered decision. First, the 2012 Administrative Order against the Respondent is reinstated and certain injunctive remedies are ordered. Second, appeal language typically found at the conclusion of this Court's decisions on appeals of Administrative Orders has been added. The newly added sections are the Findings of Fact, which start on page 4; an analysis of the violations, which starts on page 13; and an order for the remedies, which starts on page 16. The appeal language is on page 18.

1

## Procedural Background

The 2012 AO alleges that Mr. Colaceci violated conditions of his solid waste management facility certification, the Vermont Solid Waste Management Rules (VSWMR), and the Vermont Hazardous Waste Management Rules (VHWMR). In the 2012 AO, ANR assessed a $54,000 penalty and ordered Mr. Colaceci to undertake various measures to bring his facility into compliance. Mr. Colaceci timely requested a hearing on the 2012 AO.

Around the time the 2012 AO was served, Mr. Colaceci was undergoing Chapter 13 bankruptcy proceedings in the U.S. Bankruptcy Court for the District of Vermont. Ordinarily, debtors in bankruptcy enjoy an automatic stay of all litigation, but certain "police and regulatory" actions are not subject to the automatic stay. See 11 U.S.C. § 362(a), (b). ANR therefore sought an order from the U.S. Bankruptcy Court that the 2012 AO could continue under this "police and regulatory" exception. See 11 U.S.C. §362(b). On February 18, 2014, the Bankruptcy Court authorized ANR to proceed with the 2012 AO, but "only insofar as it may order Debtors to take remedial actions or to come into compliance with applicable provisions." In re Colaceci, No. 12-10382cab, at 1 (Bankr. D. Vt. Feb. 18, 2014). The Bankruptcy Court specifically ordered that "the Agency of Natural Resources is enjoined from seeking to enforce or reduce to judgment any civil penalties sought in connection with the [2012 AO]." Id.

Meanwhile, Mr. Colaceci's solid waste facility certification—the permit that authorizes him to accept used tires as solid waste, which ANR alleged he violated in the 2012 AO—was set to expire in September 30, 2014. One of the conditions of his certification was that Mr. Colaceci file a renewal application by April 2014. Mr. Colaceci failed to do so. He eventually submitted a renewal application on September 30, 2014, which ANR received on October 3, 2014. ANR deemed the application to be "administratively incomplete" and did not grant the renewal.

On October 13, 2014, ANR sent Mr. Colaceci a notice of alleged violation for continuing to operate his facility without a certification. Mr. Colaceci did not respond. In November of 2014, ANR sent Mr. Colaceci a letter stating that it intended to draw upon an $8,000 escrow account that Mr. Colaceci established in 2009 as part of his original certification, and which was dedicated to fund closure of the facility. In January of 2015, an ANR inspector toured Mr. Colaceci's property, accompanied by Mr. Colaceci, to observe his facility. In February, ANR drafted its second AO, alleging that Mr. Colaceci was continuing to operate his facility without a permit, and posted it for public comment, as required by 10 V.S.A. § 8020. On February 25, 2015, ANR moved

to continue the merits hearing on the 2012 AO, which had been set for March 11, on the basis that it was planning to serve Mr. Colaceci with a second AO in the near future, and that this second AO could affect the relief it sought under the 2012 AO. ANR sent copies of that motion to Mr. Colaceci. The Court granted the motion, noting ANR's rationale, and sent copies of the order to Mr. Colaceci.

ANR finally served the second AO on Mr. Colaceci on March 17, 2015 (the 2015 AO). ANR filed a sheriff's return of service with the Court showing that the Lamoille County Sherriff's Office served this AO on Mr. Colaceci on March 17, 2015. In the 2015 AO, ANR alleges that Mr. Colaceci continued to operate his facility after his solid waste facility certification expired on September 30, 2015. It orders Mr. Colaceci to "[i]mmediately cease operation of the facility" and to "implement the facility closure plan." It also orders Mr. Colaceci to provide ANR with the account number for the $8,000 escrow account at Chittenden Bank dedicated to closing his facility. Mr. Colaceci did not request a hearing on the second AO within fifteen days as required by statute. See 10 V.S.A. § 8012(c). The Court issued a judgment order on April 16, 2015, at which point the 2015 AO became a final judicial order. See 10 V.S.A. §§ 8008(d), 8012(c).

On May 15, 2015, the Court held a one-day merits hearing on the 2012 AO. Mr. Colaceci and ANR participated in the hearing.

On May 26, 2015, Mr. Colaceci filed a "motion to reopen" and a request for a hearing on the 2015 AO. Mr. Colaceci also moved to dismiss the 2015 AO on grounds that ANR unfairly refused to process his certification renewal application, and that closing his facility would violate his Chapter 13 plan. Finally, Mr. Colaceci moved to dismiss both AOs on grounds of selective prosecution.

Concerned that the remedy ANR sought under the 2015 AO might go beyond the scope of the "remedial actions" authorized by the Bankruptcy Court, the Court held a hearing on Mr. Colaceci's motion, with particular attention to Mr. Colaceci's arguments that the 2015 AO would violate his Chapter 13 plan.[2] At the conclusion of the hearing, the Court ordered ANR to seek authorization to pursue the 2015 AO from the Bankruptcy Court.

---

[2] The Court did not hold a full hearing on Mr. Colaceci's Rule 60(b) motion because he did not request one. See Altman v. Altman, 169 Vt. 562, 586 (1999) ("We have held that the court deciding a Rule 60(b) motion should hold a hearing where there has been a dismissal in the nature of a default or nonsuit. Nevertheless, our rules plainly require that a moving party who wishes to present evidence must submit a request for a hearing with the motion or within five days thereafter, together with a statement of the evidence offered." (citations omitted)). Mr. Colaceci

3

On April 13, 2016, the U.S. Bankruptcy Court issued an order authorizing ANR to seek closure of Mr. Colaceci's facility. In re Colaceci, No. 12-10382cab, at 1 (Bankr. D. Vt. Apr. 13, 2016). It also authorized ANR to access the $8,000 escrow account at Chittenden Bank dedicated to closure of Mr. Colaceci's facility. The Bankruptcy Court's order continued to enjoin ANR from pursuing monetary penalties. Id.

Because the Bankruptcy Court's order clarifying the scope of the "remedial actions" ANR is allowed to take alleviates the Court's concerns regarding Mr. Colaceci's Chapter 13 plan, Mr. Colaceci's motions to reopen the 2015 AO appeal, as well as the merits of the 2012 AO appeal are now ripe for review.

Based on the evidence presented at the May 15, 2015 hearing, the Court renders the following findings of fact and conclusion of law.

**Findings of Fact**

1.      Mr. Colaceci, the Respondent, operates a tire collection, storage, and transfer business on property located on Route 15 on the Wolcott/Hardwick Town line (the Property).

2.      The Property includes a garage building.

3.      On November 5, 2009, ANR issued Solid Waste Facility Certification #CA961 (the Certification) to the Respondent, authorizing operation of a transfer station on the Property for the proper management of used tires.

4.      The Certification expired on September 30, 2014.

5.      On six occasions, starting on August 9, 2010 and ending on October 4, 2011, personnel from ANR's Waste Management Division inspected the Property. During the inspections, ANR observed the following:

> a.  Tire storage bunkers had not been constructed as required by Certification Condition #2. Piles of tires were observed in piles out in the open.
>
> b.  The Facility Management Plan was not readily available on-site as required by Certification Condition #13.

requested a hearing on the underlying 2015 AO, but he did not request a hearing on his motion, or offer a specific statement of evidence related to the motion. See Respondent's Request for a Hearing at 1, filed May 26, 2015.

c. Mr. Colaceci failed to timely submit quarterly reports or franchise tax returns for the fourth quarter of 2009, all four quarters of 2010, and the first quarter of 2011 as required by Certification Conditions #20–21.

d. ANR personnel observed as many as 30 55-gallon drums containing used oil. The drums were not labeled with the words "used oil" as required by VHWMR § 7-806(b)(5), 16-3 Vt. Code R. § 202:7-806(b)(5) (WL) (2016); were stored on bare ground and not on an impervious surface as required by VHWMR § 7-806(b)(6); and were stored outdoors and not within a structure that sheds rain and snow as required by VHWMR § 7-806(b)(7).

e. On a site visit on April 4, 2011, ANR personnel observed one of the drums leaning at an angle on uneven ground or snow, creating a risk of releasing its contents in violation of VHWMR § 7-806(b)(2), 16-3 Vt. Code R. § 202:7-806(b)(2) (WL) (2016).

f. On a site visit on June 28, 2011, ANR personnel observed one drum containing used oil in the storage shed area that had severe rust and dents, and was not in good condition as required under VHWMR § 7-806(b)(4), 16-3 Vt. Code R. § 202:7-806(b)(4) (WL) (2016).

g. Pursuant to VHWMR § 7-812(c)(1), 16-3 Vt. Code R. § 202:7-812(c)(1) (WL) (2016), Mr. Colaceci did not maintain records documenting that used oil being used as heating fuel had been evaluated to determine whether it met state specifications identified in the VHWMR.

h. Mr. Colaceci could not provide records documenting the origin of the used oil, the amount accepted, and the specification testing results as required under VHWMR § 7-812(a)(2)(D), 16-3 Vt. Code R. § 202:7-812(a)(2)(D) (WL) (2016).

i. On a site visit on April 4, 2011, ANR personnel observed a tire pile containing several thousand tires located behind the garage building and immediately adjacent to a wooded area. There were no fire lanes or setbacks between the tires and the woods. The general performance standards for solid waste facilities are described in VSWMR § 6-1203(a), 16-3 Vt. Code R. § 200:12-6-1203(a) (WL) (2016).

j. On a site visit on April 4, 2011, ANR personnel observed bags of garbage piled in an open truck instead of in a certified facility as required under VSWMR § 3-6-302(d), 16-3 Vt. Code R. § 200:3-6-302(d) (WL) (2016).

5

k. On a site visit on April 18, 2011, oil-stained soils and sheens were observed in areas where drums were being stored in the front and rear of the garage building, indicating a hazardous materials release, which is regulated under VHWMR § 7-302(c), 16-3 Vt. Code R. § 202:7-302(c) (WL) (2016).

l. On a site visit on June 28, 2011, Agency personnel observed approximately 27 junk motor vehicles throughout the Property. Under 24 V.S.A. § 2242(a), salvage yards are required to obtain a Certificate of Registration issued by the ANR Secretary.

m. On a site visit on October 4, 2011, ANR personnel observed that corrective action to address the previous releases of hazardous material had not been initiated as required under VHWMR § 7-105(a)(1), 16-3 Vt. Code R. § 202:7-105(a)(1) (WL) (2016).

6. During the more than year-long enforcement effort by ANR in 2010 and 2011, Mr. Colaceci corrected some of the violations, including cleaning up the garbage, organizing the piles of used tires, submitting some quarterly reports and franchise tax returns, and properly labeling and storing some of the drums containing used oil.

7. After the initial inspections in 2010 and 2011, ANR issued the Respondent two Notices of Alleged Violation with instructions to address the observed violations. After subsequent inspections, ANR followed up with letters outlining outstanding issues and providing instructions on how to achieve compliance.

8. Mr. Colaceci's Solid Waste Facility Certification #CA961 expired on September 30, 2014.

9. On January 12, 2015, an ANR Environmental Analyst visited the facility and observed the following:

a. The facility was still in operation and accepting used tires.

b. A large amount of tires were deposited throughout the Property.

c. At least two of eight trailers on the Property contained used tires, and Mr. Colaceci represented that the other six also contained used tires.

### Conclusions of Law

I. **Request to Reopen, Request for a Hearing, and Motion to Dismiss All Enforcement Actions**

Mr. Colaceci has moved to reopen the 2015 AO and has requested a hearing. Under Rule 4(a)(2) of the Vermont Rules of Environmental Court Proceedings, which governs enforcement

matters before the Court, the Vermont Rules of Civil Procedure and the Vermont Rules of Appellate procedure apply to enforcement matters unless another procedure is expressly provided in the V.R.E.C.P. There is no explicit procedure in V.R.E.C.P. 4 for requesting a hearing on an AO that has already become a final judicial order. When a respondent fails to request a hearing on an AO, the resulting judgment is akin to a default judgment; as such, Rule 55 (governing relief from default judgments) is applicable to a request to reopen an administrative order in which no hearing has been held.[3]

Rule 55(c) provides that "the court may set [a default judgment] aside in accordance with Rule 60(b) and not otherwise." Under Rule 60(b), the court may relieve a party from the effects of judgment in the case of: (1) excusable neglect; (2) newly discovered evidence; (3) fraud; (4) void judgment; (5) discharged judgment; or (6) "any other reason justifying relief from the operation of the judgment." In the context of a default judgment, courts should be particularly lenient in applying this standard because of the law's strong preference for decisions on the merits. Ying Ji v. Heide, 2013 VT 81, ¶ 6, 194 Vt. 546.

Interpreted generously, Mr. Colaceci's motion invokes prongs 1, 4, and 6. He argues that the judgment under the 2015 AO is void because of improper service of process of the AO, stating that he "ha[s] no present recollection of being served any administrative order."[4] Respondent's Resp. to Secretary's Mem. at 1, filed June 15, 2015. He argues excusable neglect, offering that "perhaps some documents fell through the cracks" because his wife primarily handles paperwork for the household, and she has been sick with cancer for some time. Id. Finally, he invokes the sixth catch-all prong, arguing that it would be unjust to enforce the judgment because closing his facility would harm his creditors. Finally, Mr. Colaceci's motion also attacks the merits of the 2015 AO, arguing that ANR deliberately refused to process his renewal application; that ANR is

---

[3] Unlike matters that come before this Court under 10 V.S.A. § 8504, a hearing on an administrative order is not an "appeal" of a decision by ANR so much as it is a first-impression hearing on the order. Compare 10 V.S.A. § 8504 (titled "Appeals to the Environmental Division") with 10 V.S.A. § 8012 (titled "Request for a Hearing"). The Court generally applies Vermont Rule of Appellate Procedure 4(d) to late appeals under 10 V.S.A. § 8504. See, e.g., In re Davis WW/WS Permit, No. 167-11-14 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Feb. 18, 2015). Rule 4(d) would preclude Mr. Colaceci's request here, however, because a party may only move to extend an appeals deadline for 30 days after the original deadline. V.R.C.P. 4(d). Rule 60(b), however, allows a party to move for relief from judgment for one year after the judgment is entered.

[4] Mr. Colaceci adds that "[t]he only documents served on me were recently by the Lamoille County Sheriff's Department." Respondent's Response at 1, filed June 15, 2015. It is unclear what documents Mr. Colaceci is referring to by this comment, but it is entirely possible that it was actually the 2015 AO, which the Lamoille County Sheriff's Deputy attests to having served in March 2015.

selectively prosecuting him; that ANR improperly interfered with a business contract; that he has not, in fact, accepted used tires since his certification expired; that he does not need a certification to sell used tires to his auto repair customers; and that all tires on his facility are in trailers, which do not require solid waste facility certification.

a. *Rule 60(b)(4): Voidness of the Judgment*

We turn first to Mr. Colaceci's assertion that he was not served with the 2015 AO. Where there has been no proper service of process against a defendant and the defendant has not waived service of process, there is no personal jurisdiction over the defendant, and a default judgment against the defendant is void. See 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2695; id. § 2862. Where there has been no service of process, a defendant may therefore move for relief from a default judgment under Rule 60(b)(4) on grounds that the judgment is void. 10A Wright, Miller & Kane, supra § 2862; see also Blodgett Supply Co. v. Lowery, No. 2005-141, 2005 WL 6152378, at 1 (Vt. 2005) (mem.).

A sheriff's return of service is prima facie evidence of proper service if it identifies the address of service and the person served. See Blodgett, 2005 WL 6152378, at *1 (citing Taft v. Donellan Jerome, Inc., 407 F.2d 807, 808–09 (7th Cir. 1969)). A defendant's sworn denial of receipt of service will overcome the presumption created by a sheriff's return of service, but only if the defendant swears to "specific facts to rebut the statements in the process server's affidavits." Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc., 301 F.3d 54, 57 (2d Cir. 2002) (quoting Simonds v. Grobman, 277 A.D.2d 369, 369 (N.Y. App. Div. 2000)). Furthermore, the Vermont Supreme Court has held that lack of technical service of process in a suit does not render a default judgment void where a defendant has actual notice of a pending suit. Myers v. Brown, 143 Vt. 159, 167 (1983).

Here, ANR submitted a sheriff's return of process to the court when it filed its 2015 AO. That return of service states that the Lamoille County Deputy Sheriff served Mr. Colaceci in hand at 7013 Route 15 in Wolcott, Vermont. This is prima facie evidence of proper service. Mr. Colaceci equivocally denies service, stating that he has "no present recollection of being served." Respondent's Resp. at 1, filed June 15, 2015. He offers no "specific facts" to rebut the sheriff's return of service, however, and thus fails to rebut the presumption that service was proper. See Old Republic, 301 F.3d at 57.

8

Furthermore, the 2015 AO should not have come as a surprise to Mr. Colaceci. In the fall and winter of 2014 and 2015, Mr. Colaceci had five distinct indications that a second AO was imminent: in October 2014, ANR sent him a notice of alleged violation (which it has no obligation to do, see 10 V.S.A. § 8006(a)); in November, ANR sent him a letter stating that it was drawing on his facility-closure escrow account; in February, it moved to continue the hearing on the 2012 AO, explaining that it was planning to serve a second AO on Mr. Colaceci, and ANR sent a copy of that motion to Mr. Colaceci; and, finally, the Court issued an entry order granted ANR's motion to continue and noting that a second AO was imminent, and mailed a copy of that entry order to Mr. Colaceci. At the very least, Mr. Colaceci had constructive notice that a second AO was imminent. In this context, Mr. Colaceci's equivocal denial of service is not sufficient to rebut the sheriff's return of service or the layers of constructive notice. Therefore, we conclude that the judgment is not void for lack of service.

b.     *Excusable Neglect*

Mr. Colaceci argues that the 2015 AO may have slipped through the cracks due to his wife's and his son's illness. When a party seeks relief from a default judgment on grounds of excusable neglect, the court must consider whether neglect is excusable considering: (1) the degree of defendant's culpability (2) the prejudice to the non-defaulting party caused by the defaulting party's delay; (3) whether the defaulting party raises material issues of fact or meritorious defenses; and (4) the significance of the interests at stake. LaFrance Architect v. Point Five Development S. Burlington, LLC, 2013 VT 115, ¶ 15, 195 Vt. 543.

As to the first factor, Mr. Colaceci is culpable for his failure to timely respond to the 2015 AO. As discussed above, he had ample notice throughout the fall and winter of 2014 and 2015 that a second AO was forthcoming. Not only did Mr. Colaceci fail to timely request a hearing on the 2015 AO, but he failed to promptly move for relief—his 60(b) motion comes seventy days after he was first served with the AO and fifty-five days after the deadline to request a hearing on the 2015 AO. While the Court is sympathetic to Mr. Colaceci's wife's illness and to Mr. Colaceci's financial difficulties, these difficulties do not absolve him of his responsibility to respond to legal matters in a timely fashion, especially when he has ample warning of the need to respond.

As to the second factor, ANR has suffered unusual prejudice due to Mr. Colaceci's delay in this matter. ANR specifically moved to continue the merits hearing on the 2012 AO because

9

the pending 2015 AO could affect the relief sought in the first enforcement action. Had Mr. Colaceci timely responded to the 2015 AO, the two AOs could have been coordinated and considered in a single trial. If the Court were to grant Mr. Colaceci's request for a hearing on the 2015 AO, ANR would be forced to undergo significant effort and expense that could have been avoided by timely response.

As to the third factor (regarding meritorious claims or defenses), in his motion, Mr. Colaceci asserts that ANR unfairly refused to process his renewal application, that ANR is selectively prosecuting him, and that an ANR agent interfered with a lucrative business contract and caused his bankruptcy. Reading his motion generously, he also challenges the substance of the alleged violation and invokes two exceptions to the Solid Waste Management Rules' certification requirement—the recycling exception and the transport exception. See VSWMR §§ 6-301(b)(4), (7).

ANR's decision not to renew Mr. Colaceci's solid waste facility certification occurred on October 3, 2014. This decision was appealable under 10 V.S.A. § 8504. Mr. Colaceci did not appeal the decision. It is therefore final and binding, and cannot be challenged here. Mr. Colaceci's motion also fails to make out a prima facie case of selective prosecution. While he does allege that others similarly situated have not been prosecuted for conduct similar to his, he has not shown or alleged impermissible motives on the part of ANR (such as race, religion, or his exercise of constitutional rights), a necessary element of a selective prosecution defense. See State v. Zaccaro, 154 Vt. 83, 92 (1990). And, while Mr. Colaceci's allegations that an ANR agent interfered with a business contract might state a valid tort claim, that claim is not a defense in an enforcement action. Finally, though Mr. Colaceci implicitly invokes two valid exceptions to the permit requirement, he offers no facts or legal arguments as to why he qualifies for these exceptions.[5]

Turning to the fourth factor, the Court does register some concern about the weight of the interests at stake. The AO seeks a broad remedy—it orders Mr. Colaceci to "cease operation

---

[5] The recycling exception excepts "[r]ecycling facilities which accept, aggregate, store and/or process less than 50 tons of recyclable materials per year. VSWMR § 6-301(b)(4). Mr. Colaceci has not alleged that he meets this tonnage requirement or that he is a "recycling facility." The transport exception exempts "Mobile Sold Waste Collection Operations" if the vehicle is registered and inspected, the vehicles used prevent release of solid wastes, and the solid wastes collected are delivered to a solid waste management facility within 48 hours of collection. V.S.W.M.R. § 6-301(b)(7). Mr. Colaceci appears to acknowledge that his tire trailers lack proper registration. In any evident these trailers appear to have been on his Property for a long period of time—they do not deliver tires to a certified facility within 48 hours.

of his facility." This penalty is serious. Furthermore, the violation alleged in the 2015 AO is that Mr. Colaceci is continuing to operate his facility despite his expired solid waste facility certification. It does not allege any other substantive violation of the Vermont Solid Waste Management Rules or Vermont Hazardous Waste Management Rules. Thus, this second AO essentially arises out of ANR's own decision to deny Mr. Colaceci's renewal application, and the AO itself is silent as to the reasons for denying that application.

While the Court registers some concern that it does not know the reasons for ANR's denial of Mr. Colaceci's September 2014 renewal application, we note that Mr. Colaceci could have avoided this entire situation had he timely filed a renewal application for his solid waste facility certification in April of 2014. He ultimately filed a renewal application on the very day his certification was set to expire. This allowed no cushion for addressing deficiencies in his facility or his application. Any imbalance between the severity of the violation alleged in the 2015 AO (failure to recertify) and the remedy sought (closure) is therefore partly due to Mr. Colaceci's own neglect.

The Court has been sympathetic to Mr. Colaceci's family's financial and medical difficulties. But, even with these difficulties, Mr. Colaceci's failure to promptly respond to the 2015 AO is not excusable given the degree of warning leading up to the 2015 AO. Given that three of the four factors weigh against Mr. Colaceci, and that the fourth weighs but little in his favor, the Court concludes that Mr. Colaceci's neglect is not excusable, even in the more lenient and equitable context of a default judgment. The Court therefore rejects his motion as to Rule 60(b)(1).

c.    *"Any other reason"*

Rule 60(b) contains a final "catchall" provision, allowing a court to vacate a judgment for "any other reason" it deems just. V.R.C.P. 60(b). The "other reasons" Mr. Colaceci identifies are that he is "judgment-proof" and that closing his business will harm his creditors in his Chapter 13 proceedings.

The Bankruptcy Court has enjoined ANR from seeking monetary penalties, and ANR seeks none in the 2015 AO. The fact that Mr. Colaceci is "judgment-proof" is therefore not relevant to this enforcement action. Mr. Colaceci claims that Chittenden Bank has taken the escrow account established for the ultimate closure of his facility and that he therefore has no funds to comply with the closure order. Respondent's Mot. to Reopen at 2. But this does not excuse him from

11

the responsibility of providing ANR with the account number for his escrow account, as required in the 2015 AO, so that ANR can confirm or deny this claim. Furthermore, the Bankruptcy Court has authorized ANR to pursue enforcement of the 2015 AO, even though it seeks to close the facility and claim the $8,000 escrow account. Mr. Colaceci's proffered reasons do not entitle him to relief under Rule 60(b)(6).

In conclusion, the judgment in the 2015 AO is not void for lack of service of process, Mr. Colaceci's neglect in responding to the 2015 AO is not excusable, and there are no other reasons to justify relieving him from judgment under the 2015 AO. The Court therefore **DENIES** Mr. Colaceci's request to reopen and request for a hearing. Because the 2015 AO is a final and binding judgment that the Court will not revisit, the Court also **DENIES** Mr. Colaceci's motion to dismiss the 2015 AO. The 2015 AO stands as a valid judicial order.

## II.    Merits of the 2012 AO

ANR issued the 2012 AO on May 15, 2012, ordering that Mr. Colaceci pay a $54,000 penalty and to take the following steps to bring his facility into compliance: (1) cease burning used oil; (2) sample and test his stored used fuel oil; (3) move all used tire piles at least 10 feet from his property line; (4) build tire bunkers for his used tires; (5) post a copy of his facility management plan on-site; (6) refrain from storing solid waste on his Property without a certification; (7) submit quarterly reports and franchise tax returns; (8) label used oil containers and store them on impervious surfaces; (9) hire an environmental consultant to develop a work plan for investigating and remediating contaminated areas, and complete the necessary remediation work; and (10) remove junk vehicles from the Property.

The Court ultimately held a full merits hearing on the 2012 AO on May 15, 2015, and the merits of that AO are now before the Court. Given the Court's decision not to reopen the 2015 AO which orders Mr. Colaceci to close his facility in accordance with a facility closure plan, however, some of the remedies sought in the 2012 AO are now unnecessary. The 2012 AO also seeks a monetary penalty, which, pursuant to the Bankruptcy Court's order, the Court is not authorized to impose. Other remedies sought in the 2012 AO are necessary to ensure the former solid waste facility does not continue to release hazardous waste materials into the environment. We turn now to the Respondent's violations, and the remedies he will be required to perform.

12

a. *Violations*

1. Failure to Construct Tire Storage Bunkers

ANR alleges that the Respondent violated Certification Condition #2 by failing to construct tire storage bunkers; tires were instead stored in piles on the open ground. Administrative Order at 2, filed April 5, 2012). Despite two Notices of Alleged Violation and follow-up correspondence from ANR, the Respondent did not build the tire storage bunkers as of the last follow-up inspection of the Property on June 28, 2011. Based on the testimony at trial, and the photographic evidence, we conclude that Mr. Colacaci violated Condition #2 of his Certification.

2. Failure to Maintain a Copy of the Facility Management Plan On-Site

ANR alleges that the Respondent violated Certification Condition #13 during a site inspection on August 9, 2010 because the facility personnel were unable to locate a Facility Management Plan. Certification Condition #13 requires Respondent to have a copy on-site in a readily accessible location. Based on the evidence at trial we conclude that Mr. Colaceci violated this condition of his Certification.

3. Failure to Submit Quarterly Reports and Franchise Tax Returns

ANR alleges that the Respondent did not timely submit quarterly reports for the fourth quarter of 2009, all four quarters of 2010, and the first quarter of 2011, in violation of Certification Conditions #20 and 21. By the time the AO was issued in April 2012, Mr. Colaceci had submitted quarterly reports and franchise tax returns to ANR for 2009 and 2010, but not for 2011. We conclude that Mr. Colaceci violated Conditions #20 and 21 of his Certification.

4. Failure to Properly Label and Store Drums Containing Used Oil

ANR alleges that the Respondent violated VHWMR § 7-806(b)(5)–(7) by not marking 55-gallon drums containing used oil with the label "used oil," and, in one case, mislabeling the drum; storing them on bare ground and not on an impervious surface; and storing them outside and not within a structure that sheds rain and snow. During the August 9, 2010 inspection, ANR personnel observed as many as 30 unlabeled and improperly stored 55-gallon drums on the Property. ANR reported fewer unlabeled and improperly stored drums on subsequent

13

inspections. Based on the evidence at trial, including photographic exhibits provided by ANR, we conclude that Mr. Colaceci violated VHWMR § 7-806(b)(5)–(7).

5.   Failure to Maintain a 55-Gallon Drum Containing Used Oil in Good Condition

ANR alleges the Respondent violated VHWMR § 7-806(b)(4) because on a June 28, 2011 site visit, ANR personnel observed that one of the drums containing used oil was in poor condition, with severe dents and rust. Based on the evidence at trial, including a photographic exhibit of a rusting, dented drum labeled "waste oil," we conclude that the Respondent violated VHWMR § 7-806(b)(4), which requires that "[a] container holding used oil must be in good condition (no severe rusting, apparent structural defects or deterioration)."

6.   Failure to Evaluate the Used Oil to Determine Whether It Met Specifications

ANR alleges that the Respondent violated VHWMR § 7-812(c)(1) by failing to provide records to show the used oil had been evaluated to determine whether the contents met specifications identified in the VHWMR prior to its use as heating oil. Mr. Colaceci did not provide records showing that the used oil and other petroleum-based products on the Property had been sampled during any of the six site inspections performed by ANR. Based on the evidence provided at trial, we conclude that the Respondent violated VHWMR § 7-812(c)(1).

7.   Failure to Maintain Records of Where the Oil Originated

ANR alleges the Respondent violated VHWMR § 7-812(a)(2)(D) by not maintaining records to document the origin of the used oil. Section 7-812(a)(2)(D) requires the burner to retain records for three years documenting the amount of used oil fuel accepted from an off-site facility not owned or operated by the burner; the name, address, and telephone number of that off-site facility; and the specification testing results for the used oil. Because Mr. Colaceci did not produce these records, we conclude that the Respondent violated VHWMR § 7-812(a)(2)(D).

8.   Storing a 55-Gallon Drum in a Manner that Could Cause a Release

ANR alleges that the Respondent violated VHWMR § 7-806(b)(2) by placing a 55-gallon drum in such a way that it leaned at an angle on uneven ground or snow. The regulation states that a "container holding used oil must not be opened, handled or stored in a manner which may rupture the container or cause a release." Based on the evidence that ANR provided at trial from the April 4, 2011 inspection of the Property, including photographic exhibits of an oil drum

14

leaning precariously in the snow, we conclude that the Respondent violated VHWMR § 7-806(b)(2).

9. Releasing Hazardous Materials to the Environment

ANR alleges that the Respondent released hazardous materials to the environment in violation of VHWMR § 7-302(c). During the April 18, 2011 site inspection, ANR personnel observed oil-stained soils and oily sheens on water puddles in the areas where drums were improperly stored in the front and rear of the garage building. Based on evidence at trial, including photographic exhibits, we conclude that Mr. Colaceci violated VHWMR § 7-302(c), which prohibits "release of hazardous material into the surface or groundwater, or onto the land."

10. Failure to Take Corrective Action to Address the Releases

ANR alleges that more than five months after the oil-stained soil and sheens were observed, the Respondent failed to take corrective actions to address the observed releases of hazardous materials in violation of VHWMR § 7-105(a)(1). During the three site inspections subsequent to observing the releases on April 18, 2011—on May 9, June 28, and October 4, 2011—ANR found no corrective actions had been performed. Based on the evidence at trial, we conclude that the Respondent violated VHWMR § 7-105(a)(1), which requires the "person in control of such waste or material" to, in part, take clean-up actions as required by federal, state, or local officials "so that the discharged waste or released material and related contaminated materials no longer present a hazard to human health or the environment."

11. Creating a Fire Hazard and Undue Threat to Public Health and Safety, and the Environment

ANR alleges the Respondent violated VSWMR § 6-1203(a) by maintaining a tire pile of several thousand tires adjacent to a wooded area. Section 6-1203(a) requires solid waste facilities to be designed and operated in such a way as "to preclude the creation of . . . undue threats to public health and safety or to the environment." On April 4, 2011, ANR personnel observed the pile located behind the garage building on the Property. There were no fire lanes or setbacks separating the pile from the wooded area. Based on the evidence at trial, including photographic exhibits, we conclude that Mr. Colaceci created a fire hazard that unduly threatened the public health and safety, and the environment in violation of VSWMR § 6-1203(a).

15

12. Storing Solid Waste Outside a Certified Facility

ANR alleges the Respondent violated VSWMR § 6-302(d).  Bags of raw garbage were piled in an open truck, with some loose waste on the ground around the truck.  Based on the evidence at trial, including photographic exhibits from an April 4, 2011 inspection of the Property, we conclude that the Respondent violated VSWMR § 6-302(d), which prohibits "storage or disposal of solid waste outside of a certified facility except for the limited exemptions" set forth in the rules.[6]

13. Operating a Salvage Yard Without Obtaining a Certificate of Registration

ANR alleges the Respondent was operating a salvage yard without a Certificate of Registration from ANR in violation of 24 V.S.A. § 2242(a), which also requires a certificate of approval for the location of the salvage yard.  On various site inspections in 2011, ANR personnel observed unregistered vehicles on the Property.  During the June 28, 2011 inspection, ANR personnel reported as many as 27 junk motor vehicles were on the Property.  Mr. Colaceci had not obtained a Certificate of Registration from ANR to operate a salvage yard.  Based on the evidence presented at trial, including photographic exhibits, we conclude that Mr. Colaceci violated 24 V.S.A. § 2242(a).

b.  *Order*

Based on the enumerated violations and the need to ensure the former solid waste facility does not continue to pose a threat to the public health and safety, and the environment, we **AFFIRM** the legal conclusions rendered by the ANR Secretary and detailed in the April 5, 2012 AO and do hereby order the following injunctive relief imposed by the ANR Secretary:

A.  No later than seven (7) consecutive calendar days from the date of this Decision and corresponding Judgment Order, Respondent shall sample all used fuel oil tanks and all drums containing used oil or other unidentified fluids to evaluate if the fuel meets the specifications identified in VHWMR § 7-812.  Respondent shall submit the sampling results to the Agency no later than thirty (30) consecutive calendar days from the date of sampling.  Respondent shall maintain records for a period of three

---

[6] The situation observed and documented by ANR does not meet one of the exceptions allowed under VSWMR § 6-301(b)-(c), 16-3 Vt. Code R. § 200:3-6-301(b)-(c) (WL) (2016).

years documenting the amount of used oil fuel burned on-site, and that used fuel oil has been evaluated in accordance with VHWMR § 7-812.

B.  Respondent shall comply with the used oil management standards identified in VHWMR § 7-806. No later than seven (7) consecutive calendar days from the date of this Decision and corresponding Judgment Order, Respondent shall label all used oil containers with the words "Used Oil" such that the label or marking is visible. Additionally, all containers of used oil shall be stored on an impervious surface and within a structure that sheds rain and snow.

C.  No later than seven (7) consecutive calendar days from the date of this Decision and corresponding Judgment Order, Respondent shall hire an environmental consultant experienced in the investigation and remediation of hazardous waste-contaminated sites.

D.  No later than thirty (30) consecutive calendar days from the date of this Decision and corresponding Judgment Order, Respondent shall have his consultant submit to the ANR, for approval, a work plan for investigating the contaminated areas.

E.  Respondent shall complete the site investigation no later than forty-five (45) consecutive calendar days following ANR's approval of the work plan.  Respondent shall provide to the ANR a report detailing the findings of the site investigation no later than fifteen (15) consecutive calendar days following completion of the site investigation.  Respondent shall comply with ANR's directives and timeframes for completing corrective action pursuant to 10 V.S.A. § 6615b.

F.  No later than fifteen (15) calendar days from the date of this Decision and corresponding Judgment Order, Respondent shall remove all junk vehicles from the Property and properly dispose of them at a certified salvage yard.  Junk vehicles shall be removed intact and shall not be crushed or otherwise dismantled prior to delivery to the certified salvage yard.  Respondent shall refrain from establishing or operating a salvage yard on the Property without a Certificate of Registration issued by ANR pursuant to 24 V.S.A. § 2242(a).

## Conclusion

We **DENY** Mr. Colaceci's motion for relief from judgment under Rule 60(b), and decline to hold a hearing on the merits of the 2015 AO.  The 2015 AO therefore stands as a valid judicial

order, and Mr. Colaceci must comply with its provisions.  Mr. Colaceci must also comply with the six remedial directives in the 2012 AO that are described herein.

### Rights of Appeal (10 V.S.A. § 8012(c)(4)–(c)(5))

**WARNING:** This Decision and the accompanying Judgment Order will become final if no appeal is requested within 10 days of the date this Decision is received.  All parties to this proceeding have a right to appeal this Decision and Judgment Order.  The procedures for requesting an appeal are found in the Vermont Rules of Appellate Procedure (V.R.A.P.) subject to superseding provisions in Vermont Rule for Environmental Court Proceedings (V.R.E.C.P.) 4(d)(6).  Within 10 days of the receipt of this Order, any party seeking to file an appeal must file the notice of appeal with the Clerk of the Environmental Division of the Vermont Superior Court, together with the applicable filing fee.  Questions may be addressed to the Clerk of the Vermont Supreme Court, 111 State Street, Montpelier, VT 05609-0801, (802) 828-3276.  An appeal to the Supreme Court operates as a stay of payment of a penalty, but does not stay any other aspect of an order issued by this Court.  10 V.S.A. § 8013(d).  A party may petition the Supreme Court for a stay under the provisions of the Vermont Rules of Civil Procedure (V.R.C.P.) 62 and V.R.A.P. 8.

An Altered Judgment Order accompanies this decision.  This concludes the matters before the Court.

Electronically signed on December 06, 2016 at 09:26 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

18